UNITED STATES, Appellee

v.

BOOKER C. FIELD, Private E–2, U. S. Army, Appellant

3 USCMA 182, 11 CMR 182

LT COL Edgar R. Minnich, U. S. Army, LT COL George E. Mickel, U. S. Army, MAJ Edwin Doran, U. S. Army, for Appellant.

COL Allan R. Browne, U. S. Army, LT COL William R. Ward, U. S. Army, LT COL Thayer Chapman, U. S. Army, and 1ST LT Kenneth A. Howard, U. S. Army, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

On April 30, 1952, the members of the 4005th Enlisted Detachment, Fort Worth, Texas, were scheduled to be paid. At about 1:00 p.m. on that day, Sergeant George R. Burks reported for his pay but payment to him was refused because the payroll disclosed he had already collected the money. At that time it became evident that someone had signed Burks' name in the appropriate space on the payroll list and had received the amount due him as he had not signed his name on the form, nor had he authorized anyone else to do so for him. On the same day the accused was observed in the pay line by a payroll guard who was acting as payroll assistant. The guard later identified the accused as the person he had observed signing Burks' name to the roll. An investigation was made and after accused's return from an unauthorized absence he was examined by agents of the CID but he denied any participation in the crime. Eventually charges were brought against him for absence without leave in violation of Article 86, Uniform Code of Military Justice, 50 USC § 680, and for fraudulently obtaining payment of a claim against the United States by forging the signature of Sergeant Burks upon the payroll in violation of Article 132, of the same Act, 50 USC § 726. He was tried by a general court-martial upon the two charges, found guilty as charged, and sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances, and to be confined at hard labor for two

and one-half years. The convening authority approved the findings and sentence and a board of review in the office of The Judge Advocate General of the Army affirmed. A petition to this Court for a review of the findings and sentence was granted, the scope of the review being specifically limited to two assigned errors. These are (1) Whether the offense set forth in Charge II was properly alleged as a violation of Article 132; and (2) whether the law officer erred in admitting in evidence Prosecution Exhibits 4 and 5 and, if so, did the error prejudice the accused.

The offense under the first charge, absence without leave, was established adequately by official records and since we did not find sufficient cause to warrant considering that charge on this review, the finding of guilty is affirmed. We, therefore, pass to consider the first issue set out above.

Counsel for accused contend that the second charge was improperly alleged under Article 132, Uniform Code of Military Justice, supra, as the crime committed, if any, was forgery and the charge should have been laid under Article 123, 50 USC § 717. For the purposes of this opinion, it is not necessary that we concern ourselves with the offense of forgery since we believe the facts show clearly that the offense proscribed by Article 132 was charged properly. That Article prohibits the commission of frauds against the Government and provides, in pertinent part, as follows:

"Any person subject to this code—

.    .    .    .    .    .

"(2) who, for the purpose of obtaining the . . . payment of any claim against the United States or any officer thereof—

.    .    .    .    .    .

(C) forges or counterfeits any signature upon any writing or other paper, or uses any such signature knowing the same to be forged or counterfeited;

.    .    .    .    .    .

shall, upon conviction, be punished as a court-martial may direct."

The Manual for Courts-Martial, United States, 1951, paragraph 211e, employs the following language in discussing this offense:

"*Discussion.*—See 211a and b. See also 202 (Forgery). Any fraudulent making of the signature of another, whether or not an attempt is made to imitate the handwriting, is forging or counterfeiting.

"*Proof.*—(a) That the accused forged or counterfeited the signature of a certain person on a certain writing or other paper as specified; or that he used the forged or counterfeited signature of a certain person, knowing such signature to be forged or counterfeited, as alleged; and (b) facts and circumstances showing that his act was for the purpose of obtaining the approval, allowance, or payment of a certain claim against the United States, as alleged."

The specification is set forth in the following language:

"Specification: In that Private E–2 Booker C. Field, . . . for the purpose of obtaining the payment of a claim against the United States in the amount of $122.00, did, at Fort Hood, Texas, on or about 30 April 1952, forge the signature of Sergeant George R. Burks, upon a DD Form 115 Pay Roll for the Enlisted Detachment, 4005th Area Service Unit, Station Complement."

It is contended that the offense of fraud against the Government is not alleged because placing a signature on a

payroll form constitutes nothing more than a receipt for the money and it is, therefore, outside the usual meaning of the codal provision "for the purpose of obtaining the . . . payment of any claim." We do not disagree with the concept that signatures upon a payroll form might constitute evidence that the persons who signed the roll have received payment in the amounts listed opposite their names. However, we believe that under the method of operating in the armed services, if a signature on a roll is forged and money obtained, a fraud against the Government has been perpetrated. In this connection the evidence shows that the payees on the payroll cannot obtain the amounts set opposite their names until they have signed in the appropriate place. It often happens that the paying officer does not know all the individuals signing the roll and he must rely on the signature for identity. At least he does not part with the money until the party claiming the pay signs on the dotted line. Accordingly, when a person affixes his signature to the payroll one of his principal purposes is to remove the last obstacle in the way of payment. Assuming the signature is forged for that purpose, the act of signing embodies more than merely acknowledging the receipt of money. This problem has plagued the Army on prior occasions and for at least ten years the rule has been that signing a payroll is presenting a claim.

An Army board of review in United States v. Gaston, 33 BR 211, announced that rule. The board stated (page 217):

"The evidence is sufficient to show that accused forged an entry on his service record purporting to promote himself to sergeant and thereafter signed the payroll and received the pay of a sergeant, on the dates alleged in the Specifications. *By signing the payroll under these circumstances accused was guilty on each occasion of presenting a false claim against the Government*, and Specifications 7 to 11, Additional Charge I, alleging this offense, have accordingly been sustained. . . ." [Emphasis supplied].

184

There the accused was charged with a violation of Article of War 94, 10 USC § 1566, which is substantially similar to the offense proscribed by the quoted provision of Article 132, supra. In that case he had wrongfully altered his service record by promoting himself to the grade of sergeant when he was, in reality, only a private. Subsequently, in five instances, he signed his name to a payroll and received pay in the grade of sergeant. Under one charge, Specifications 7 to 11, inclusive, alleged that the acts of signing and being paid upon a payroll constituted presenting, for approval and payment, a claim against the United States. That holding goes further than we need to go in this instance as we need not rule on presentment. All we need decide is whether there was a claim against the Government and whether the forgery was for the purpose of obtaining payment thereon.

In the case at bar, it is apparent that Sergeant Burks had a valid claim against the United States for his pay for the month of April 1952. He could obtain payment of that claim at the pay table only by signing the payroll form in the space opposite his typed name. Without his signature, the paying officer would not deliver the funds. The accused, not known to the paying officer, by forging the sergeant's name, obtained the payment due him. As a result of that forgery, one not entitled to satisfy the obligation obtained money claimed legally by another by doing two things: (1) misrepresenting he was the payee, and (2) forging the payee's name. This is one of the offenses Article 132, supra, specifically covers, and it is the crime which was alleged against the accused under the second charge. When we consider the act alleged and when we view the charge as a whole, we see sufficient facts set forth in the specification to state an offense. Moreover, the pleading meets the tests we have previously set out by which specifications should be measured, namely, it apprises the accused of the offense with which he is charged and it precludes his being tried a second time for the same offense. In addition, the specification conforms to the form prescribed by the Manual (See Form No.

110, Appendix 6c, Manual for Courts-Martial, United States, 1951), and no attack was made on it until the case was on appeal. Accordingly, we hold that the second charge was properly alleged as a violation of Article 132, supra.

The second issue upon which accused's petition was granted concerns the admissibility of two photostats of a military payroll list offered in evidence by the prosecution. During the course of the trial, prosecution presented the testimony of a photographer who testified that certain documents had been furnished to him by a Captain Deskins. The witness identified Exhibits 4 and 5 as photographs of those documents which he had caused to be reproduced. Exhibit 4 is entitled "Military Payroll Money List" and it contains on one line the typed name and serial number of George R. Burks, the amount of $122.00 and a space where the name George R. Burks is written. Prosecution Exhibit 5 is an enlargement of the same list showing the information in larger type and size. If a foundation to admit the exhibits can be found in the record, it must be extracted from the testimony of the photographer. We have searched the record with care and find none. The witness stated that he had not made the actual photographs but they had been done by someone in his office. He further stated that he could not identify the exhibits as copies of an official military payroll list because he was unfamiliar with such documents, and it was not within his duties to know about or maintain such official records.

Defense counsel objected to the admission of the documents in evidence. He based his objection upon their failure to meet the standards of the best evidence rule and the lack of testimony to show they were authenticated or certified copies of an original official document. Government counsel concede that their admission in evidence was error but contend that in view of the entire record no prejudice resulted to the accused from their admission. We believe the concession is appropriate but disagree with the Government's contention as to prejudice.

**185**

Undoubtedly, there is sufficient evidence in the record to support the finding of guilty of the offense charged, particularly if the story told by accused is rejected by the court-martial; but that is not an appropriate test to be applied in this instance. Here, the offense charged is based upon an alleged forgery by the accused. The only evidence concerning identity of the forger, aliunde the inadmissible exhibits and the testimony necessarily flowing out of them, was contained in a deposition by one Sergeant Blasingame. He was the assistant payroll clerk and he testified he saw the accused sign Burks' name to the payroll list and recognized him as the forger because he was the only one of 150 men who had signed with his left hand. However, there are some circumstances which weaken the effect of that evidence. Moreover, it is contradicted by accused's positive denial, while on the witness stand, that he signed Burks' name to the list or obtained the money. The findings of the court-martial would, therefore, be influenced in a large measure by the kind and amount of corroborative testimony. Absent corroboration of the testimony of either witness, the task of determining who was telling the truth, would be difficult. With good fortifying evidence, either side would gain the advantage. The Government, by inadmissible evidence, was allowed to strengthen the testimony of Sergeant Blasingame by placing in evidence unauthenticated exhibits which were used by an expert witness as a basis for opinion evidence that the handwriting on the payroll list was that of the accused. That type of evidence is usually highly regarded by members of a court-martial and it is easy to conclude that in this instance it sounded the death knell for the accused. The impact on the minds of court members would be such that a finding of not guilty would be foreclosed. Under those circumstances prejudice is apparent.

The finding of the board of review on the second specification is reversed, a rehearing is ordered and the sentence is set aside. The finding on the first specification is affirmed. The record is returned to The Judge Advocate General of the Army for further action not inconsistent herewith.

Chief Judge QUINN and Judge BROSMAN concur.