UNITED STATES, Appellee,

v.

Garry W. REED, 454 08 6588, Private (E–1), U. S. Marine Corps, Appellant.

UNITED STATES, Appellee,

v.

Mark G. HEDLUND, 399 64 2084, Private (E–1), U. S. Marine Corps, Appellants.

NCM 75 1210 and NCM 75 1083.

U. S. Navy Court of Military Review.

Sentences Adjudged 24 March 1976.

Decided 3 Feb. 1977.

Commander A. W. Eoff, II, JAGC, USN, Appellate Defense Counsel.

Lieutenant Robert R. Sparks, JAGC, USNR, Appellate Defense Counsel.

Captain Mark M. Humble, USMCR, Appellate Government Counsel.

Captain W. D. Blalock, USMCR, Appellate Government Counsel.

En Banc.

## Opinion

**PER CURIAM:**

On 24 March 1975, the appellants were tried separately by the same military judge, sitting alone, as a general court-martial on the following charges arising out of the same incident, viz: Charge I, conspiracy to rob; Charge II, robbery and Charge III, kidnapping, in violation of Articles 81, 122 and 134, 10 U.S.C. §§ 881, 922 and 934, UCMJ, respectively. Each appellant was sentenced to a dishonorable discharge, confinement at hard labor for 7 years, and total forfeitures. Pursuant to pretrial agreements, the convening authority approved the sentence, changed the nature of the punitive discharge to one of bad conduct, and suspended on probation the execution of the confinement and forfeitures in excess of 22 months in each case. The findings and sentences were affirmed by this Court. *United States v. Hedlund*, No. 75 1083 (N.C.M.R. 11 Aug. 1975); *United States v. Reed*, No. 75 1210 (N.C.M.R. 30 Sept. 1975).

On its review of each case, the United States Court of Military Appeals found jurisdiction in the courts-martial as to Charge I but no jurisdiction as to Charges II and III. The findings of guilty as to Charges II and III were set aside, and those charges were dismissed. That Court reversed our prior decisions and returned the cases to this Court for action on the sentences. *United States v. Hedlund*, 2 M.J. 11 (1976); *United States v. Reed*, 2 M.J. 16 (1976).

■ The appellants now contend that their pleas of guilty to the conspiracy charge were rendered improvident because of substantial misunderstanding of the maximum punishment which could be imposed.[1] Appellants assert that we should set aside the findings and sentences and return the cases for rehearings, citing, *inter alia, United States v. Harden*, 1 M.J. 258 (1976). This Court, on its own motion, decided to consider these cases together, sitting as a whole.

Appellants' convictions of conspiracy to rob have become final. This Court ordinarily has no jurisdiction to further consider whether those convictions are correct in law and in fact. The convictions are final by operation of law because the United States Court of Military Appeals did not overturn those convictions. The affirmations of guilt by this Court were obviously considered on review of the decisions. Those affirmations were not set aside. They therefore became final under applicable statutes, through the mandate of the United States Court of Military Appeals. Arts.

---

1. *See United States v. Lynch*, 2 M.J. 214, Memorandum Opinion and Order (C.M.A.1977), in which, in a companion case with identical charges, the decision of this Court affirming the findings and sentence was reversed by a majority of the Court of Military Appeals but, unlike the instant cases, all findings and the sentence were set aside and a rehearing authorized as to the conspiracy charge. In *Lynch*, after conceding lack of jurisdiction as to the robbery and kidnapping offenses, the government had ". . . conceded that a substantial misunderstanding existed on the part of the appellant as to the maximum sentence in [that] case and that such a misunderstanding render[ed] the appellant's plea of guilty to the conspiracy charge improvident." The disposition in *Lynch*, directed by the majority, was made, "[i]n light of the government's concessions. . . . "

Government counsel, in the *Hedlund* brief currently before this Court, likewise conceded the improvidency of the plea to the conspiracy charge and in *Reed*, failed to respond to the improvidency issue raised as a supplemental assignment of error. After this Court's order referring these cases for joint consideration sitting as a whole, the government moved to file a late response to the supplemental error assignment in *Reed* and concurrently asked to withdraw its concession in *Hedlund*, substituting the late pleading sought to be filed in *Reed*. The government's motions were denied as untimely.

67 and 76, UCMJ; *United States v. Field,* 5 U.S.C.M.A. 379, 18 C.M.R. 3 (1955); *United States v. Yelverton,* 26 C.M.R. 586 (A.B.R. 1958), *pet. withdrawn,* 9 U.S.C.M.A. 836, 26 C.M.R. 516 (1958); *United States v. Fields,* 26 C.M.R. 681 (A.B.R.1958), *pet. den.,* 10 U.S.C.M.A. 663, 27 C.M.R. 512 (1958); *see also United States v. Field,* 3 U.S.C.M.A. 182, 11 C.M.R. 182 (1953); *United States v. Yelverton,* 8 U.S.C.M.A. 424, 24 C.M.R. 234 (1957); *United States v. Fields,* 9 U.S.C. M.A. 70, 25 C.M.R. 332 (1958). As a consequence, we consider it is unnecessary to discuss the providency issue.

▇ Turning to consideration of the sentences in view of the remaining findings of guilty, we note that the Court of Military Appeals remanded these cases to the Court of Military Review for action on the sentences in accordance with its decisions. We interpret the mandates as allowing the exercise of discretion in determining whether the records of trial should be returned for rehearings as to sentence, or whether it would be appropriate to reassess the sentence ourselves.

The appellants argue that they are entitled to rehearings on the sentence at the trial level. They contend this is required because the principal findings of guilty upon which their sentences were based have been overturned. The Court of Military Appeals has, in certain cases not dissimilar to appellants', indicated that the interests of justice would best be served by permitting a "primary" rather than a "secondary and derivative" redetermination of the sentence. *See United States v. Voorhees,* 4 U.S.C.M.A. 509, 531, 16 C.M.R. 83, 105 (1954); *United States v. Timberlake,* 22 U.S.C.M.A. 117, 120–121, 46 C.M.R. 117, 120–121 (1973); *United States v. LeBlanc,* 19 U.S.C.M.A. 381, 41 C.M.R. 381 (1970); *United States v. Swanson,* 9 U.S.C.M.A. 711, 717, 26 C.M.R. 491, 497 (1958); *United States v. Johnson,* 7 U.S.C.M.A. 488, 494, 22 C.M.R. 278, 284 (1957). The Court of Military Appeals has also recognized, however, that substantial discretion is allowed a reviewing authority or appellate court in determining whether a rehearing on the sentence by a court-martial should be ordered or whether it should reassess the sentence at its own level. *See United States v. Zunino,* 15 U.S.C.M.A. 179, 35 C.M.R. 151 (1964); *United States v. Christopher,* 13 U.S.C.M.A. 231, 32 C.M.R. 231 (1962); *United States v. Timberlake, supra.*

Under the circumstances of these cases, we consider it entirely acceptable to reassess the appropriateness of appellants' sentences at this level. The records of trial reveal that both appellants have been released from confinement and the approved forfeitures applied to their pay. Separate inquiry discloses that Private Reed was released from confinement on 3 November 1975, when he commenced a parole status. His sentence to confinement and forfeitures continued to run, although he was no longer physically confined. *See* SECNAV Instruction 1640.8A of 4 June 1974. The record of trial indicates Private Hedlund was not granted parole, but separate inquiry discloses he was released from confinement on 28 July 1976. Therefore, as a practical matter, the only real question for consideration is whether the remaining offense of conspiracy to commit robbery warrants the remaining unexecuted portion of the sentence in each case, the bad conduct discharge. This is a proper matter for decision by this Court. *See United States v. Zunino, supra.*

▇ The appellants request that the bad conduct discharges in their cases be either suspended or disapproved. They note that a panel of this Court previously held that the Courts of Military Review possess the power to suspend a sentence. *United States v. Silvernail,* 1 M.J. 945 (N.C. M.R.1976), *certification dismissed as moot,* No. 32,530 (U.S.C.M.A. 26 Aug. 1976). Whether or not this opinion was correct need not detain us, because such action would clearly not be appropriate in these cases.

The appellants stand convicted of conspiracy to commit robbery, an offense which must be considered extremely serious. The records of trial disclose that the co-conspirators planned to carry out their robberies by

assaulting hitchhikers. To that end they armed themselves with steel pipes to use as weapons [*Hedlund*, R. 24–26; *Reed*, R. 17–18]. Such conduct clearly warrants separation with a bad conduct discharge in the case of each appellant.

Accordingly, as to each appellant, the findings of guilty as to Charge I, and the specification thereunder, have become final. Upon reassessment and with a view toward equalization of the sentence as to each appellant, only so much of the sentences as approved on review below, as provides for a bad conduct discharge, confinement at hard labor for 16 months, and forfeiture of all pay and allowances, during the period of confinement, in each case, is affirmed.

Chief Judge CEDARBURG, Senior Judge NEWTON, Judges MALLERY, GLASGOW and GLADIS concur.

DUNBAR, Judge (concurring):

I concur with the majority opinion in the conclusion reached in this matter. However, it would appear that the sole issue still lurking in the background of these cases is factual and can be stated as follows: At the time appellants entered their pleas, and in view of all the circumstances prevailing at that time, both legal and practical, can the pleas be considered to have been improvident. I would hold that they were not.

Appellants were charged with serious offenses. They were represented by qualified defense counsel. The opportunity to carefully examine the charges and specifications and to weigh the possibilities and consequences of entering guilty or not guilty pleas was afforded each appellant. Government authorities made no representations or guarantees as to the legal efficacy of the charges or as to what legal eventualities might develop during the appellate process.

Appellants knowingly, freely and with the advice of competent counsel elected to plead guilty, fully aware of the fact that guilty pleas would necessitate letting the cat out of the bag regarding the details of their involvement in the alleged offenses. This is not a case where through error appellants were misled by incorrect advice or other negligence on the part of government representatives. I would hold that the appellants took complete advantage of their legal rights and their pleas were providently entered.

BAUM, Judge (concurring):

I join with the majority in the view that the convictions of conspiracy to rob have become final and that it is inappropriate for this Court to further entertain issues relating to these guilty findings.

I believe it important, however, to point out that if appellant's assertion of plea improvidency were a proper matter for consideration at this stage, it should be fully briefed and argued by both sides before deciding the issue. The Court should not be impelled to action on the basis of error conceded, as has been done by the government's counsel in one of these cases. The concept that a plea of guilty may be set aside, based upon the accused's misunderstanding of the allowable sentence, is not new. Extension of that principle to the instant fact situation, however, is a significant departure from past practices and warrants a full airing of competing viewpoints.

The idea that a plea of guilty once entered, accepted, and resulting in a conviction could and possibly should be overturned because of a misunderstanding as to sentence was first encountered within the military justice framework 20 years ago in the opinion of Chief Judge Quinn where he concurred in the result in *United States v. Hamill*, 8 U.S.C.M.A. 464, 24 C.M.R. 274 (1957). At that stage of the law, there was a real question whether guilty plea findings should be set aside at the appellant level without an averment of innocence by the accused. Chief Judge Quinn fully addressed that issue, citing Judge Learned Hand as a leading proponent of the position that findings of guilty should remain intact without an assertion of innocence. Chief Judge Quinn's view, which became the military rule, was that "in an appropriate case the interest of justice is better served by

setting aside the plea without regard to whether the supporting affidavit contains an averment of innocence." In *Hamill* there was no question of the accused's guilt. He had pleaded guilty pursuant to a pretrial agreement and was not claiming innocence on appeal. When pleading guilty, however, there was a misunderstanding with respect to the sentence action the convening authority was supposed to take as part of the plea bargain. Although the Court found that this mistake was such that it could have induced the accused's plea of guilty, it disposed of the case by permitting appropriate lower authority to bring the sentence within the terms understood by the accused when he entered his plea. Reduction of the sentence continued to be the remedy for the ensuing years. For example, in *United States v. Zemartis*, 10 U.S.C.M.A. 353, 27 C.M.R. 427 (1959) the accused was informed at trial that the maximum sentence for the offense to which he was pleading guilty did not include a bad conduct discharge. When the trial court properly awarded a punitive discharge by application of one of the clauses permitting additional punishment in Section B, Table of Maximum Punishments, par. 127, *Manual for Courts-Martial, 1951*, the Court of Military Appeals chose to affirm the decision of a board of review which disapproved the bad conduct discharge rather than overturning the findings.

It was a departure, then, in 1968 when the Court of Military Appeals set aside a finding of guilty due to a possible misunderstanding of the maximum sentence. *United States v. Turner*, 18 U.S.C.M.A. 55, 39 C.M.R. 55 (1968). The subsequent cases of *United States v. Towns*, 22 U.S.C.M.A. 600, 48 C.M.R. 224 (1974) and *United States v. Harden*, 1 M.J. 258 (1976) have followed this course rather than reducing the sentence. Until recently, however, that action had never been applied to the instant fact situation, where any possible misunderstanding of sentence limits has resulted from an after the fact disapproval of one or more of the findings of guilty, thus reducing the aggregate permissible maximum punishment. I am not unmindful of the significant step

taken by the United States Court of Military Appeals in its summary disposition reversing the companion case of *United States v. Lynch*, 2 M.J. 214 (1977). That action, however, was not a reasoned decision based on a full airing of competing ideas and viewpoints. It was, instead, based on a concession of error by government counsel. Before further extending the concept embodied in *Turner*, *Towns* and *Harden*, serious thought should be given to whether justice is, in fact, better served by such a course. We would all do well to reconsider the words of Judge Hand as quoted in *Hamill, supra* :

" . . . he [the accused] has twice admitted all the facts constituting the crime and he still does not repudiate his admissions. A person indicted for crime may of course insist that only a jury shall decide his guilt; but he must at least deny that he is guilty; he must tender an issue. In the case at bar whether or not Paglia has any ground for relief as to his sentence, surely he has none for withdrawing his plea. He is not entitled to gamble upon the outcome of a trial in which he could succeed only by repudiating what he has twice conceded and does not now disavow. Justice is not a game; there is no constitutional right to 'throw dust in a juryman's eyes, or hoodwink a judge who is not overwise.' So far then as the motion was to set aside the plea of guilty and permit a plea of not guilty to be substituted, it is contrary to principle, and, as it happens, is also contrary to the only precedence that we have found." *United States v. Paglia*, 190 F.2d 445 (CA 2nd Cir.) (1951).

It may no longer be contrary to precedent but the principle is still there.

Every trial judge, today, carefully follows the precept of *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969) and, before accepting a plea of guilty, he establishes thoroughly on the record that the accused knowingly, intelligently and consciously waives his rights against self-incrimination, trial of the facts by court-mar-

tial, and confrontation by and cross-examination of adverse witnesses. He further satisfies himself that the accused has pleaded guilty not only in the hope of securing a lenient sentence but because in his own mind he is guilty, with facts to support that conclusion. Finally, he establishes that the accused pleads with the knowledge that even though he believes he is guilty he has a moral right to plead not guilty and place upon the prosecution the burden of establishing his guilt by legal and competent evidence beyond a reasonable doubt. When we overturn findings of guilty that are based on such carefully arrived at pleas and do it not because the accused now claims innocence as well as error, or because of unkept promises by the government which prompted the plea but merely because we, at the appellate level have reduced the number of offenses and the aggregate maximum sentence has, accordingly, been diminished, we should consider whether we may be doing irreparable harm to the system of criminal justice. The government, the accused and society in general should be able to rely with some degree of certainty on the decisions of our courts at both the trial and appellate levels. When findings and precedent are blithely overturned without competing interests being fully and fairly represented, then our system may stop bending and finally break.

As stated at the outset, I concur with the majority in holding that the remaining findings of guilty in these cases have become final. I also concur with their view on reassessment and join with them in their action on the sentence.

GREGORY, Judge (concurring):

I concur in the rationale and conclusion of the majority that the appellants' convictions of conspiracy to commit robbery have become final by virtue of the action of the Court of Military Appeals and that it is unnecessary for this Court to address the issue of the providency of the appellants' pleas of guilty to this offense. *United States v. Field*, 5 U.S.C.M.A. 379, 18 C.M.R. 3 (1955), and *United States v. Yelverton*, 26

C.M.R. 586 (A.B.R.1958), *pet. withdrawn*, 9 U.S.C.M.A. 836, 26 C.M.R. 516 (1958). *Also see generally United States v. Kepperling*, 11 U.S.C.M.A. 280, 29 C.M.R. 96 (1960). In view of the discussion concerning providency in the dissenting opinion, however, I consider it appropriate to set forth my own views as to why the appellants' pleas should not be held improvident even if we were to have found this a legitimate area of concern.

Upon remand, the appellants point out the substantial difference in the maximum sentence had they been prosecuted only for the offense for which there proved to be court-martial jurisdiction. At the time of trial, the appellants believed they were subject to possible life imprisonment in light of the alleged kidnapping offense, charged as a violation of the California Penal Code. The conspiracy charge which remains in these cases authorizes confinement at hard labor for only 10 years. There can be little argument that this is a substantial difference. I do not believe, however, it necessarily follows that the pleas of guilty were improvident.

As noted in the principal opinion, the appellants have based their arguments on *United States v. Harden*, 1 M.J. 258 (1976), and the cases cited therein, which stand for the general proposition that a plea of guilty may be improvident if predicated upon a substantial misunderstanding as to the maximum sentence to which an accused is subject. *See generally United States v. Towns*, 22 U.S.C.M.A. 600, 48 C.M.R. 224 (1974); *United States v. Turner*, 18 U.S.C.M.A. 55, 39 C.M.R. 55 (1968); *United States v. Windham*, 15 U.S.C.M.A. 523, 36 C.M.R. 21 (1965). In my opinion, however a significant difference exists between these cases and those of our two appellants. *Harden* and its predecessors all involved questions of multiplicity or other errors as to the maximum sentence which were not handled correctly by the military judge and which misled the accused at the trial level. None of the cases cited by appellants have involved reversal of a finding of guilty on jurisdictional or other grounds.

In the instant cases, appellants were apparently correctly advised at trial as to the aggregate maximum punishment for the offenses to which they were then pleading guilty. As noted in the *Hedlund* opinion, the bulk of military precedent supported almost automatic court-martial jurisdiction where the victim was a service member, regardless of all other factual circumstances. *See United States v. Hedlund,* 2 M.J. 11, 13 (1976). This view proved to be incorrect, however, when the facts of appellants' cases were subsequently reviewed by the Court of Military Appeals within the guidelines set forth in *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971). There is certainly no evidence in these cases of any misrepresentation or other impermissible conduct on the part of the government in an attempt to secure appellants' guilty pleas.

We would be obligated to rule the appellants' pleas improvident were we to find a fair risk that they did not understand the consequences of their pleas at the time they entered the pleas. Article 45, Uniform Code of Military Justice. The records of trial indicate otherwise, however. At trial, counsel for each accused moved to dismiss the robbery and kidnapping offenses on jurisdictional grounds, but their motions were not successful at that level. With this in mind, the appellants entered their pleas of guilty. The military judge then conducted a thorough inquiry into these guilty pleas, *United States v. Care,* 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969), and both appellants advised the military judge that they understood the effect of their pleas and that no one had applied any pressure on them to enter into their pretrial agreements and to plead guilty. [*Hedlund,* R. 43; *Reed,* R. 30]. They readily acknowledged their guilt to all offenses, including the alleged conspiracy.

Under these circumstances, I consider it inappropriate to establish a precedent that may indicate a providency issue is present in all guilty plea cases where some of the findings are later reversed on jurisdictional or other grounds (*e. g.,* an inadequate *Care* inquiry). Such a procedure, resulting in retrials long after the fact when memories are hazy and government and defense witnesses may no longer be available, does not appear likely to meet the ends of justice.

I believe the situation we find confronting us in these cases is analogous to that which faced the United States Supreme Court in *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), a case in which the appellant claimed he had entered a plea of guilty to kidnapping in 1959 in the belief he could have been subject to a possible death penalty if tried by a jury. In 1968 this death penalty provision was found to be unconstitutional, and Brady thereupon attacked the providency of his guilty plea. In holding that it was not required that Brady's conviction be set aside, Mr. Justice White, writing for the Court, stated:

Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents, cf. *Von Moltke v. Gillies,* 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948), a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the

plea rested on a faulty premise. A plea of guilty triggered by the expectations of a competently counseled defendant that the State will have a strong case against him is not subject to later attack because the defendant's lawyer correctly advised him with respect to then existing law as to possible penalties but later pronouncements of the courts, as in this case, hold that the maximum penalty for the crime in question was less than was reasonably assumed at the time the plea was entered.

The fact that Brady did not anticipate *United States v. Jackson* [390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968)], does not impugn the truth or reliability of his plea. We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions. [*Id.* 397 U.S. at 756–7, 90 S.Ct. at 1474].

*See also McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); *United States v. Dusenberry*, 23 U.S.C.M.A. 287, 49 C.M.R. 536 (1975); *United States v. Tinley*, 2 M.J. 694 (A.F.C.M.R.1976).

The reasoning of *Brady* is considered equally applicable to the situation existing in the cases of our two appellants. A guilty plea, voluntarily and intelligently made and in which the accused has clearly acknowledged the actions forming the basis for his plea, should not be set aside merely because subsequent judicial decisions which cause reversal of some of the findings render the maximum penalty then assumed applicable to be so no longer. Action may be appropriate with respect to the sentence, but not with respect to the findings.

In summary, I am convinced that the appellants' pleas of guilty to the conspiracy charge were voluntarily and intelligently made, and, if required, I would specifically find no improvidence in the pleas to this charge.

CRANDELL, Judge (dissenting):

For reasons hereinafter stated, I dissent.

Appellants were tried by general court-martial military judge, in separate trials, for conspiracy to commit robbery, robbery, and kidnapping with intent to commit robbery, in violation of Articles 81, 122, and 134, UCMJ, on 24 March 1975. The military judge adjudged a sentence in both cases of dishonorable discharge, confinement at hard labor for 7 years and forfeiture of all pay and allowances. A synopsis of these offenses as taken from the court-martial order in appellant Reed's case, *haec verba*, but which applies and refers to appellant Hedlund also, is as follows:

On 7 January 1975 the accused, two companions, and the wife of one of the companions wanted to go for a ride and drink beer. Having no money they conspired to find some drunks in the city of Barstow, California, and roll them. Unable to find any drunks, they decided to pick up hitchhikers for the same purpose. They effected the conspiracy by picking up two individuals (by the names of Private First Class William A. BECK and Mike MARTINSON) from Main Street near the exit to Interstate 15 to Las Vegas. They were asked by the hitchhikers where they were going and they replied that they were going to Las Vegas; whereupon, the hitchhikers got in the car. BECK sat in the front seat between Private LYNCH[1] and his wife, who was

1. The case of this co-conspirator was decided by this Court in *United States v. Lynch*, No. 75 1401 (NCMR 16 Aug. 1976), *pet. granted*, No. 33,220 (U.S.C.M.A. 9 Dec. 1976), on the following issues:

I. Whether the court-martial lacked jurisdiction to try appellant for the robbery and kidnapping?
II. Whether appellant's plea to the conspiracy was improvident?
A decision was rendered on 28 January 1977, by the High Military Court on this case.

driving, and MARTINSON got in the back between Privates HEDLUND and REED. They proceeded on Interstate 15 towards Las Vegas, and when they approached the Bakersfield offramp Private LYNCH's wife stated they had to get gasoline before continuing on; whereupon, she took the Bakersfield exit off the freeway. They passed a couple of gasoline stations but did not stop. Private LYNCH then pulled out an eighteen-inch-long pipe and stated that he hated to be impolite but this was a robbery. Meanwhile, Private HEDLUND said to MARTINSON in the back seat that if he moved he would get stuck. He was wearing forks wrapped around his fists with the tines sticking out. After Private LYNCH stated it was a robbery, PFC BECK asked him not to leave them out in the desert, to take what they wanted and take them back to town. This angered Private LYNCH, who then stated he had been doing this for a long time and did not need help from anybody, and gave BECK a blow on his side with the pipe. They drove on for two or three miles and turned off onto another road in North Barstow. They went for quite a while and then stopped, where LYNCH ordered them out of the car. There LYNCH took PFC BECK to the front of the car and proceeded to rob him of a gold bracelet. HEDLUND and REED took MARTINSON to the back of the car, but MARTINSON did not have anything on his person so he was not robbed.

Pursuant to pretrial agreements, the convening authority in each case, only approved a bad conduct discharge, confinement at hard labor for 7 years and total forfeitures, however, the execution of those portions adjudging confinement and forfeitures in excess of 22 months was suspended for the period of confinement and one year.

On 17 September 1975, this Court affirmed the findings and sentence in the *Hedlund* case, and on 30 September 1976, took the same action in the *Reed* case. Appellants then petitioned the Court of Military Appeals. The petition was granted and that Court held, in *United States v. Hedlund*, 2 M.J. 11 (1976), that the court-martial lacked jurisdiction to try the appellants on the robbery and kidnapping charges but had jurisdiction to try the conspiracy charge. *See also United States v. Reed*, 2 M.J. 16 (1976). By orders dated 29 September 1976, the records of trial were transmitted to this Court for action on the sentence in accordance with the decision of the Court of Military Appeals.

The offense upon which a sentence may now be predicated in each of appellant's cases is conspiracy to commit robbery, Article 81, Uniform Code of Military Justice. The prior disciplinary record considered by the military judge as aggravation during the sentencing portion of the trials was a 1974 summary court-martial and nonjudicial punishment in *Reed's* case and a 1974 nonjudicial punishment in *Hedlund's* case. As stated before, both appellant's present sentences consist of a bad conduct discharge, confinement at hard labor for 7 years and forfeiture of all pay and allowances with confinement and forfeitures over 22 months suspended.

Appellant Reed now assigns before this Court the following:

APPELLANT'S SENTENCE MUST BE SUBSTANTIALLY REDUCED.

Appellant Reed also assigns a supplemental error:

APPELLANT'S PLEA OF GUILTY WAS IMPROVIDENT DUE TO A SUBSTANTIAL MISUNDERSTANDING ON APPELLANT'S PART AS TO THE MAXIMUM PUNISHMENT TO WHICH HE WAS SUBJECT.

Appellant Hedlund also assigned as error the latter assignment. I will treat the assignment of error dealing with alleged improvidency initially. My opinions as expressed herein make it unnecessary to discuss the initial assignment of error in *Reed's* case. Resolved to its essential reali-

ty, the basic issue before this Court in these cases is: What is the appropriate action which this Court should take to carry out the mandate of the Court of Military Appeals in a legal manner which is consistent with the existing statutory and decisional law as enunciated by the Court of Military Appeals?

Prior to treating this matter, I must note that in the companion case, cited in footnote 1 of this dissenting opinion, the High Military Court issued the following Memorandum Opinion and Order:

In accordance with his pleas, the appellant was found guilty by general court-martial of conspiracy to commit robbery, robbery, and kidnapping. His pleas of guilty to the charged offenses were offered and accepted at trial on the understanding that the maximum punishment of the charged offenses included confinement at hard labor for life. In view of this Court's recent determination in *United States v. Hedlund* [2 M.J. 11] (1976), that the robbery and kidnapping offenses charged against appellant's co-actor, one Private Mark G. Hedlund, were not service connected, the government has conceded, before this Court, that appellant's court-martial lacked jurisdiction to try him on the robbery and kidnapping charges. Since the maximum imposable period of confinement for the remaining charge of conspiracy to commit robbery is 10 years, the government has also conceded that a substantial misunderstanding existed on the part of the appellant as to the maximum sentence in this case and that such a misunderstanding renders the appellant's plea of guilty to the conspiracy charge improvident.

In light of the government concessions and on consideration of appellant's recently filed Motion for Summary Disposition, it is, by the Court, this 28th day of January 1977,

ORDERED:

That so much of the order granting the petition for review, dated December 9, 1976, as directed the filing of briefs under Rule 43 be, and the same is, hereby vacated; and

That the decision of the United States Navy Court of Military Review be, and the same is, hereby reversed. The findings and sentence are set aside and the record of trial is returned to the Judge Advocate General of the Navy. A rehearing of the conspiracy charge may be ordered. *United States v. Lynch*, 2 M.J. 214 (C.M.A.1976).

A plea of guilty may be improvident where, for whatever reason, it is predicated upon a substantial misunderstanding on the accused's part as to the maximum punishment to which he is subject. *United States v. Harden*, 1 M.J. 258 (1976); *United States v. Towns*, 22 U.S.C.M.A. 600, 48 C.M.R. 224 (1974); *United States v. Windham*, 15 U.S.C. M.A. 523, 36 C.M.R. 21 (1965). The misunderstanding in this case was certainly "substantial," (a possible sentence of confinement at hard labor for life, *vis a vis*, 10 years). Accordingly, I believe appellants' pleas to the remaining conspiracy offense were improvident.

I not only disagree with the result reached by the majority but also with the approach used to reach that result. The majority have declined to discuss the providency issue at all. I am of the view that the providency issue in these cases will not melt away by ignoring it on the grounds that it is time to conclude this litigation and that by ignoring that issue this Court is not following the decisional law spelled out by the Court of Military Appeals. It is, of course, always desirable to conclude litigation but not when the conclusion results from failure to accord a criminal defendant his due process under applicable law.

Even Government counsel oppose the view espoused by the majority, for in their pleadings in the *Hedlund* case they concede:

The Government agrees with appellant that the difference between life imprisonment is substantial and that his plea may have been improvidently entered. While the opinion of the Court of Military Ap-

peals ordering the record remanded "for action on the sentence in accordance with this decision" could be read as affirming the finding as to Charge I, it is more likely that this issue was not preceived [sic] by that Honorable Court when their opinion was written and the Government declines to argue that appellant should be foreclosed from raising an issue which, as appellant's astute appellate defense counsel points out, "was not apparent until the High Court acted in his case." Accordingly, the Government respectfully submits that the appropriate disposition by this Honorable Court should be to find the guilty plea to Charge I improvident and remand the record for a rehearing on the merits.

I view this concession on the part of the Government as entirely appropriate. In the light of that position by the Government one must wonder how the majority gravitated to an opposite polarity, and I attempt to analyze that position.

In this connection, however, I first note that in the footnote to the principal opinion the fact that the government conceded the improvidency of the plea in *Lynch, supra,* is highlighted as being the principal reason for the Court of Military Appeals' reaching the result they did. I reject this reasoning if this is what the language is intended to mean. In the first place, as I have previously stated, I think the concession by the government is entirely appropriate. If there were ever any cases where concession on providency should be made, these two cases are prime examples. Analogous reasoning is found in the Federal Rules of Civil Procedure. Thus, for example, if a litigant fails to admit the truth of any matter, after being requested to do so under Rule 36, FRCP, and the truth of such matter is thereafter proven by the opposing party, the reasonable expenses of proving such matter, including reasonable attorney's fees, can be assessed against such litigant. *See* Rule 37(c), FRCP. In the *Lynch* case, the government's concession saved all concerned time, effort, and money, and was commendable appellate practice under the circumstances of this case.

In the second place I do not believe that the Court of Military Appeals would have acted upon it unless they thought it was an appropriate concession and one to which the Court gave mature deliberation before accepting and acting upon it. In short, I believe the Court of Military Appeals believed that the pleas in *Lynch, supra,* were in fact improvident. Indeed, the bare recitation of the factual posture of the case as contained in the Memorandum Order and Opinion is virtually enough to compel the conclusion of improvidency.

It is my view that the majority has undertaken to ignore if not attempt to overrule *United States v. Harden, supra.* The majority say that this Court ordinarily has no jurisdiction to further consider the convictions in the cases *sub judice.* But this overlooks the stated rule, namely "ordinarily." These certainly aren't ordinary cases. Our duty is to do justice and it is, in my mind, sacrificing substance on the altar of form to say we cannot consider the substantial question of providency because of the technicality of the convictions having become final—a proposition I am not prepared to concede.

As I view it, the Court of Military Appeals did not affirm the conspiracy conviction. Their Order was:

That the decision of the United States Navy Court of Military Review is reversed. The findings as to Charges II and III are set aside and the same are dismissed. The record is returned to The Judge Advocate General for remand to the Court of Military Review for action on the sentence in accordance with this decision. (Underscoring supplied).

This Court's decision affirming the conviction on Charge I was overturned. Nowhere do I read where the Court of Military Appeals affirmed Charge I. In essence, our High Military Court held that the military court system had jurisdiction to try appellants on the conspiracy charge and directed action on the sentence in accordance with the determination of that Court as to jurisdiction. I would take the High Military

Court's mandate to implicitly mean "appropriate" action on the sentence, and if this Court, in the exercise of its fact-finding powers, determined that the sentence action this Court could take would be predicated upon an improvident plea, then we should follow the law as enunciated by the Court of Military Appeals in *United States v. Harden, supra,* for such situations.

It has been judicially said of the military prosecutor, and rightly so, I think, that, "The role of trial counsel . . . is not that of a partisan advocate, but, rather his primary duty as a representative of the Government, is to see that justice is done." *United States v. Johnson,* 3 U.S.C.M.A. 447, 13 C.M.R. 3 (1953). *Also see, United States v. Johnson,* 11 U.S.C.M.A. 113, 28 C.M.R. 337 (1960), *United States v. Smith,* 40 C.M.R. 432 (A.B.R.1968), and *United States v. Poteet,* 50 C.M.R. 73 (N.C.M.R.1975). "He is the representative, not of a party to ordinary civil litigation, but of the sovereign state. It is his primary duty to see that justice is done." *United States v. Valencia,* 1 U.S.C.M.A. 415, 4 C.M.R. 7 (1952).

If this is the case, it would seem to me, *a fortiorari,* that an appellate tribunal, whose duties, in part, include to judicially judge, guide, and oversee, the conduct of the trial adversaries, should not be held to a standard any less than one which is expected of the trial advocates, namely to insure that justice is done. To me it offends the concept of justice to finalize criminal convictions and approve sentences where there have obviously been improvident pleas.

Since the facts of the cases *sub judice* were identical to those in *Lynch, supra,* and since appellants and Lynch were all *in pari delicto,* it is difficult for me to understand how this Court can disagree on the providency in *Hedlund* and *Reed's* cases in light of the Court of Military Appeals' action in *Lynch.* The principles of fundamental fairness and equal protection of the laws forbid such disagreement. The reasoning of the concurring opinions to the contrary, it will not change the fact that the High Military

Court has spoken on the matter. I am however, prepared to rationalize my view that the pleas in this case were improvident.

To determine whether appellants pleas were provident, I initially examine *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747, (1970), relied upon by my distinguished Brother Gregory in his concurring opinion. In *Brady,* the appellant contended, in essence, on appeal to the Supreme Court of the United States, that his plea was improvident because he allegedly misapprehended the maximum sentence applicable for the crime to which he pleaded guilty. To me *Brady* is clearly distinguishable because in the case *sub judice* appellants were sentenced for three crimes, the two most serious of which the military judicial system had no jurisdiction over. All of the charges authorized forfeiture of all pay and allowances as well as a dishonorable discharge. As far as confinement however, the conspiracy charge permitted 10 years confinement at hard labor as did the robbery charge. The kidnapping charge permitted a sentence to confinement at hard labor for life. The record of trial shows that appellants Reed and Hedlund were 18 and 19 years old respectively, at the time of trial. With a life expectancy of over 50 years for both of these appellants,[2] I find a "substantial difference"[3] between a possible 10 year sentence, and a life sentence. Hence, I find an improvident plea in both cases.

*Brady* is also distinguishable in that *certiorari* was granted to consider the claim that the Court of Appeals was in error in not holding Bardy's plea was improvident in 1959 because it was coerced by the provisions of 18 U.S.C. § 1201(a), which provided for the death penalty, in the light of subsequently enunciated law by the Supreme Court of the United States in *United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). In the case at bar the guidelines of *Relford v. Commandant,* 401

---

**2.** *See* Am.Jur.2d Deskbook, 1976 supplement, Document 142.1.

**3.** *United States v. Harden, supra.*

1126

U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), were available to the trial judge to apply. The trial judge, as well as this Court simply misapplied *Relford* and the Court of Military Appeals in their decision merely demonstrated that and cast light upon that misapplication.

In *Harden, supra,* the appellant was under the misapprehension that the maximum sentence was 20 years confinement at hard labor. Because of multiplicity considerations, the correct maximum confinement at hard labor was 10 years. The Court of Military Appeals found that the 10 year difference between the legal maximum and the maximum sentence upon which the appellant predicated his guilty plea to be "substantial" and, under the facts of that case, that the guilty plea was improvident.

I am not unaware of the fact that merely because there exists a difference between what the actual maximum sentence is in a given case and the erroneously perceived maximum sentence, does not automatically trigger reversal under *Harden* since the Court in that case also stated:

In a particular case, even a substantial difference may not be material to an accused. Such a case was *United States v. Kleinhans,* 14 U.S.C.M.A. 496, 34 C.M.R. 276 (1964). There, the accused was charged with two offenses, each of which was believed to authorize confinement for 5 years, so that the maximum confinement was represented to be 10 years. At trial, defense counsel indicated his awareness that the offenses might not be separately punishable; still, he asserted that "regardless of the ultimate decision" as to the true, legal maximum, the accused would "stand by his negotiated plea." As the accused had expressly taken into account the potential difference in punishment, there was no issue as to the providence of his plea of guilty. All that remained in the case was the error in the instructions on the sentence that resulted from the trial judge's erroneous determination that the offenses were separately punishable.

Nor do I believe that a mathematical percentage nor a given term of years necessarily mandates taking *Harden* action.[4] But if the principle in *Harden* has any viability, I can scarcely conceive of a case more appropriate for its applicability than one in which appellants are sentenced on the basis of the commission of three felonies, the two most serious over which the sentencing tribunal has no jurisdiction, and in which the perceived maximum sentence is life imprisonment for 18 and 19-year old accused, vis-a-vis a legal maximum sentence of 10 years. If any cases should fall under the penumbra of *Harden,* these two should in my view, and no hearing under *United States v. DuBay,* 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967), is required to reach that conclusion.

In his reasoning as to the providency of the pleas in these cases my distinguished Brother Dunbar, in finding providency, uses as part of his rationale the fact that government authorities made no promises or representations as to legal efficacy of the charges or as to what might develop on appeal. I must reject this approach and I believe the very assertion of this proposition demonstrates the improvidency of the pleas here. Appellants trials were not legal roulette proceedings. Provident pleas can only be grounded on conscious, informed decisions by accused persons. To say an accused must take his chances as to whether the charges will stand up on appellate review, in these circumstances, and that whether or not they do stand up or not the plea will be provident is repugnant to our sense of justice and *contra legem terrae.* Moreover, it could be asserted that appellants were misled by government agents in that there was an implied representation by the government that there was jurisdiction to prosecute and punish for all offenses involved. This, as we have seen, was incorrect. In the case *sub judice,* appellants were not advised that, if on appeal it were held that the military judicial system did not have cognizance of the two off-base offenses the conspiracy offense would re-

4. *See United States v. Towns,* 22 U.S.C.M.A. 600, 48 C.M.R. 224 (1974).

main. Thus this situation was not like that in the *Kleinhans* case. The pretrial bargain in this case was a "package" deal.

From the foregoing, it follows that I believe that since there was a substantial difference in the understanding of these appellants as to the maximum sentence to which they were subject, I cannot say that the guilty pleas of the appellants were provident, particularly where the appellants were compelled to plead guilty in order to preserve their negotiated pretrial agreement. *United States v. Harden, supra; United States v. Towns, supra; United States v. Windham, supra.*

It seems to me that if appellants could negotiate a pretrial agreement providing for the suspension of all confinement in excess of 22 months for felonies which carried a maximum confinement at hard labor for life, they might well have bargained for, if not achieved, a more favorable agreement had they known they only faced 10 years instead of life. Had the trial judge correctly applied the *Relford* criteria the appellants would have been in a position to renegotiate their bargain.[5]

My distinguished Brother Gregory is concerned that by applying the *Harden* rule we would set an undesirable precedent which may indicate a providency issue is present in all guilty plea cases where some of the findings are later reversed on jurisdictional or other grounds. To my mind, the precedent has already been set. As I read *United States v. Towns, supra*, and *United States v. Harden, supra*, they stand for the proposition that whenever there is a substantial misunderstanding as to the legal maximum sentence applicable, this can lead to an improvident plea and whether or not it is improvident is determined by an elastic standard. I certainly would not hold that in every case where appellate action results in setting aside some guilty finding or findings that a providency issue is meritoriously raised. But when the issue is plainly

present it cannot be sidestepped or ignored and we should not fail to give judicial recognition to clearly applicable judicial precedence on the grounds that a misreading of the decision will establish an undesirable precedent. The answer to that is to write an opinion that does not confuse, not to ignore an applicable precedent.

At this point it may be appropriate to turn to the reasoning of the majority opinion as to finality. I see no inconsistency between Article 76, UCMJ, and making a determination, at this point in these cases, that under the circumstances the pleas of guilty were improvident. *See* Articles 76 and 66, *supra*. If the pleas were improvident, then "action on the sentence in accordance with (the Court of Military Appeals) decision" in the light of the *Harden* case would be implementing the mandate of the Court of Military Appeals.

In the first place, assuming *arguendo* that the majority were right in their basic proposition that the conspiracy convictions were final, then, if appellants pleas were in fact improvident, and I think that has been amply demonstrated, then, under the majority reasoning, appellants could file a writ of error *coram nobis* with the Court of Military Appeals. Since that Court has already held that the pleas of the co-conspirator Lynch, who was tried and pled guilty to the exact same charges as the appellants, was improvident, then it would seem that the High Military Court would grant the relief prayed for in such a writ. The Court of Military Appeals would then, under that theory, send the case back with a mandate similar to the one in *Lynch*. This, it seems to me, would be a useless act and the maxim *Lex neminem cogit ad vana seu inutilia peragenda* would be applicable. The law forces no one to do useless things. It would be a useless act to burden the Court of Military Appeals with a request to take action which this Court can take in order to accomplish justice.

---

5. I am fully aware of the horrendous nature of the crime as set forth in the synopsis at the beginning of this opinion. It might well be that appellants could not have struck a better bargain had they been aware of the correct maximum punishment. But it was their right to make an informed decision on the matter.

The majority opinion relies on *United States v. Field*, 5 U.S.C.M.A. 379, 18 C.M.R. 3 (1955). As far as that case's applicability to the case at bar, I do not believe that old law like old wine gets better with age necessarily. *Field, supra*, was an entirely different situation than the one at bar. In the *Field* case, the appellant was convicted of forgery and unauthorized absence. By reason of errors having to do with the forgery charge only, the Court of Military Appeals reversed the finding on that charge only and returned the case after affirming the unauthorized absence charge. The mandate of the Court directed that "the decision of the Board of Review in this case be, and the same is hereby, affirmed in part and reversed in part for the reasons set forth in the following opinion." Upon a rehearing of the case, findings of guilty were returned as to the forgery charge. A stipulation was presented to the court to the effect that the accused had been found guilty of absence without leave at a previous court-martial, that on appellate review the findings as to that conviction had been affirmed, and that the accused stood finally convicted of that offense, although he was at that time unsentenced for the offense. Based on those facts the court members were informed, without defense objection, that they were required to sentence the accused for both offenses. Upon appeal, appellate defense counsel questioned the propriety of considering the original offense at the second trial.

The Court of Military Appeals held that the procedure employed at the rehearing was correct and stated, *inter alia*, that:

> Clearly no final action can be taken by this Court to impose a sentence based on those findings which are untainted by error, and whereon a rehearing as to guilt or innocence cannot be justified. See Manual, supra, paragraph 92. If no further legal action may be taken at this appellate level with respect to such findings, there would seem little point in their retention here.

This is clearly distinguishable from the case *sub judice* where the Court of Military Appeals set aside the decision of this Court, decided the issue before them, namely, whether the military court system had jurisdiction to try appellant for any or all of the offenses, and returned the case for action on the sentence in accordance with their decision. The question of providency was never formally addressed to the High Military Court. Clearly the whole thrust of the Court of Military Appeals decision went to the jurisdictional issue for, after concluding that military jurisdiction was not present as to the robbery and kidnapping charge, in the penultimate paragraph of the decision, the Court stated:

> However, as the conspiracy was formulated on post, and as the gathering of weapons—a step towards affecting the object of that conspiracy—occurred on post, the court-martial did possess jurisdiction to try the conspiracy charge. *See Relford v. Commandant, supra.*

Surely the High Military Court did not mean to suggest that: (1) appellants could not raise the providency issue before this Court which was inchoate until the Court of Military Appeals decision on whether there was jurisdiction as to the robbery and kidnapping charges, nor (2) that this Court should take sentence action based on a plea of guilty to a charge as to which jurisdiction had been settled but which plea was found to be improvident.

The case of *United States v. Yelverton*, 26 C.M.R. 586 (A.B.R.1958), pet. withdrawn, 9 U.S.C.M.A. 836, 26 C.M.R. 516 (1958), does not, in my view support the proposition for which it is cited. As the Army Board of Review said in the lead paragraph in that case:

> The principal question presented by this case is whether an accused may change his plea of guilty to one of not guilty during a rehearing as to sentence only, which was ordered pursuant to the mandate of the Court of Military Appeals.

I find insufficient analogy between that issue and the one at bar to justify the case being used as authoritative precedent to decide the pertinent issue present. I fur-

ther find it insufficient to support the proposition for which it is cited in the majority opinion.

As for the case of *United States v. Fields*, 26 C.M.R. 681 (A.B.R.1958), *pet. den.*, 10 U.S.C.M.A. 663, 27 C.M.R. 512 (1958), I find little solace for the reasoning of the majority opinion therein. In that case, the Court of Military Appeals had returned the case for a new staff judge advocate's review [6] because of inadequate advice to the convening authority. A new advice was submitted and in due course the case was again before the Army Board of Review. The appellant then, for the first time assigned as error two issues, viz: that the law officer's instructions were prejudicially erroneous, and that the law officer's instructions illegally shifted the burden of proof by requiring the accused to explain his possession of allegedly stolen property. The Board of Review, in its opinion, *inter alia*, stated:

We sympathize with Government counsel's view that the business of the courts is to bring litigation to an end and not to promote or perpetuate it. We cannot agree with his argument that the mandate of the Court of Military Appeals remanding the record for a new review to correct a specific error of omission in the initial review placed a jurisdictional limit upon the powers of the convening authority or upon this Board of Review restricting our reconsideration of the case, during the course of its second ascent through appellate channels, to the single issue on which the Court had acted.

.     .     .     .     .

Though we consider our jurisdiction on a second review in a case such as this unaffected by the mandate previously issued therein, and in the course of such review would not permit fine technical distinctions to thwart the correction of an error that materially prejudiced the substantial rights of the accused or would result in a miscarriage of justice, we would apply where appropriate the doctrines of waiver, res adjudicata or the law of the case when confronted with belated

assignments of error. [Footnote omitted]. (Underscoring added).

The Board then went on to decide the two assignments of error but decided them against the appellant.

While I do not find that this case is supportive of the proposition propounded in the majority opinion, I do believe the above-quoted language from the case buttresses the reasoning of the dissent.

*United States v. Yelverton*, 8 U.S.C.M.A. 424, 24 C.M.R. 234 (1957), is not in my view applicable as supporting the proposition propounded by the concurring opinion since the sole holding there was that *United States v. Rhinehart*, 8 U.S.C.M.A. 402, 24 C.M.R. 212 (1957), relating to improper argument of counsel was applicable to *Yelverton's* case. The *Fields* case, cited in Footnote 6, has already been discussed and is similarly inapplicable to the case at bar.

The concurring opinion of my distinguished Brother Gregory also cites the case of *United States v. Kepperling*, 11 U.S.C.M.A. 280, 29 C.M.R. 96 (1960), for the proposition of finality. That case is not, in my opinion, applicable. In that case the accused had insulated himself with a pretrial agreement and pleaded guilty at the original trial in Japan to a larceny committed in Japan. Appellate scrutiny of the law officer's providency inquiry disclosed that the plea was completely provident. An Army board of review however, found that the law officer's instructions on punishment were erroneous and set aside the sentence ordering a rehearing on the sentence only. At the rehearing held in the United States the accused tried to plead not guilty. He was not permitted to do so. The Court of Military Appeals held that the accused could not change his plea at the rehearing on the sentence. The Court, *inter alia*, stated:

Without doubt then, the accused, prior to announcement of sentence at the initial hearing, should be permitted to withdraw his guilty plea and require the Government to prosecute the case on the

6. *See United States v. Fields*, 9 U.S.C.M.A. 70, 25 C.M.R. 332 (1958).

merits. Indeed, the law officer so advised this accused before accepting his plea. <u>Likewise, it is clear that if the findings and sentence resulting from a trial are set aside because of jurisdictional error or an improvident guilty plea,</u> an accused may, at a subsequent hearing, enter a plea of not guilty if he chooses. However, the defense wants to extend that doctrine by urging us to hold that the law affords this same right to an accused who comes before a second court when a board of review or this Court orders a rehearing on sentence only. To this position we cannot subscribe. (Underscoring supplied).

Again it seems to me that the authority cited supports the dissenting views more than the proposition for which it is cited.

Finally, I must note, and reject, the validity of the applicability to this situation, of the doctrine of the law of the case. It has been said that, "The decision, judgment, opinion or rulings on former appeal or writ of error become 'law of the case.'"[7] The doctrine embodies the principle recognized by the courts to refuse to relitigate, in the same proceeding, issues that have been finally decided. The applicability of the doctrine to military trials has been repeatedly recognized. Basically, the doctrine, as applied to military law, recognizes the binding effect of prior rulings by the military judge, convening authority, Courts of Military Review, and the Court of Military Appeals in subsequent relitigation between the same parties (the government and the same accused) where such rulings have not been overturned by a higher appellate agency. Thus the military judge's ruling is the law of the case unless that ruling is overturned by the convening authority, the Court of Military Review or Court of Military Appeals. Similarly, a determination by the Court of Military Review, unless overruled by the Court of Military Appeals, is the law of the case upon a rehearing or reconsideration of that case. *See United States v. Beebe,* 47 C.M.R. 386 (1973). The doctrine is analogous to but clearly distinguishable

from the doctrine of res judicata. 5 Am. Jur.2d § 744. *Also see United States v. Marks,* 21 U.S.C.M.A. 281, 45 C.M.R. 55 (1972). An extensive discussion of the law of the case is contained in 5 Am.Jr.2d § 744 to 759.

As previously stated, the doctrine has been recognized as applicable to military law. *United States v. Vanderpool,* 4 U.S.C. M.A. 561, 16 C.M.R. 135 (1954), at page 141. ". . . this previous decision [of the board of review] must be taken to have stated the law of the case. . . ." In speaking of the rulings by the (then) law officer the Court of Military Appeals has stated:

> However, when he rules, his decision becomes the law of the case. <u>Unless set aside on appeal,</u> his ruling is binding on the Government as well as the accused. *United States v. Strand,* 6 U.S.C.M.A. 297, 20 C.M.R. 13 (1955) at page 22 of 20 C.M.R. [Underscoring supplied].

Of course the same principle is applicable as the case proceeds up the appellate ladder and is applicable to factual, as well as legal rulings by intermediate appellate authorities. *United States v. Alaniz,* 9 U.S.C.M.A. 533, 26 C.M.R. 313 (1958). Thus, if the military judge is reversed on a factual matter by the convening authority that becomes the law of the case unless overturned by a higher appellate tribunal. Similarly, the legal, as well as factual, conclusions of the Court of Military Review which are not reversed by the Court of Military Appeals are binding at a rehearing as the law of the case. *United States v. Wallace,* 27 C.M.R. 605 (A.B.R.1958). This case involved a rehearing. On page 606 of 27 C.M.R. the following language is contained:

> The previous opinion of this board held that the evidence must be excluded. *This is the law of the case* and *is binding between the parties at trial level* as well as on this review. (see *United States v. Watson,* D.C., 146 F.Supp. 258, overruled on another ground, *Watson v. United States,* 101 U.S.App.D.C. 350, 249 F.2d 106).

---

7. Black's Law Dictionary, 4th Ed. p. 1030.

The distinguishing features which make the doctrine of the law of the case inapplicable to the issue in the case *sub judice* as to whether this Court can consider appellant's claims of improvidency, are, initially, that the Court of Military Appeals has vacated our original decisions in these cases, and the fact that the improvidency issue was inchoate and did not spring to life until the Court of Military Appeals had rendered their decision that there was no jurisdiction in the military court system to try these appellants for the two most serious crimes to which they pleaded guilty and upon which they were sentenced. The issue having surfaced by the action of the High Military Court in correctly interpreting the *Relford* criteria, it is my view that appropriate action by this Court would be to consider the newly surfaced issue *de novo* in taking appropriate action on the sentence and, if it appeared, as it does to me, that the sentence which could be assessed at this level was for the commission of a crime as to which there was an improvident plea, that we should act accordingly. Appropriate action would be to follow the precedent and legal guidance provided by the Court of Military Appeals in *United States v. Harden, supra.*

With respect to my distinguished Brother Baum's concurring opinion, I can only say that I must part company with his views for the reasons stated above and since I believe it is inappropriate for this Court to suggest that the High Military Court made a determination on improvidency without knowing what the facts were and having the matter "fully briefed and argued by both sides before deciding the issue."

Under the circumstances I believe the pleas as they now stand, should not be accepted and the findings and sentence should not be affirmed.

My discussion of the foregoing issues and the majority's disposition of the case makes it unnecessary to discuss the first issue.

I would set aside the findings and sentence and return the record to the convening authority, authorizing a rehearing.

MURRAY, Senior Judge (concurring in dissent of Judge CRANDELL):

I join in the dissent of Judge Crandell. I would add that it escapes this author how the majority of the Court could find support in the cases of *United States v. Yelverton,* 26 C.M.R. 586 (A.B.R.1958), *pet. withdrawn,* 9 U.S.C.M.A. 836, 26 C.M.R. 516 (1958); *United States v. Field,* 5 U.S.C.M.A. 379, 18 C.M.R. 3 (1955); and *United States v. Fields,* 26 C.M.R. 681 (A.B.R.1958), *pet. denied,* 10 U.S.C.M.A. 663, 27 C.M.R. 512 (1958), for the proposition that this Court cannot examine the cases *sub judice* for purposes of determining whether the change of circumstances (*i. e.,* dismissal of two charges due to lack of jurisdiction) has now resulted in a question of providency of the plea of the appellants to the remaining offense.

Our responsibility is one of doing justice and in doing so I am of the opinion that we ought to examine the record as a whole to determine whether justice is to be accomplished in light of the action of the High Court and the return of the case to our Court for further appropriate action. For it is in the High Court's own pronouncements that we find that justice cannot be accommodated by accepting the providency of the plea of guilty of an accused when the accused was genuinely under a misunderstanding of the potential punishment he faced at trial, and when the guilty pleas were motivated by that very misunderstanding. *United States v. Harden,* 1 M.J. 258 (1976).

I agree with Judge Crandell that we should not read into the decisions of the High Court in the cases *sub judice* that the convictions as to the conspiracy offense have been affirmed by that Court. In addition, I am of the opinion that it would not be in the interest of justice to refuse to reconsider the providency of the appellants' pleas on the conspiracy charge merely because the High Court may have meant to imply finality of conviction as to that charge, particularly where the predicate therefor is open to question. I feel we ought to reconsider the providency of the

pleas in light of *Harden* and its related line of cases, and I am not convinced that the High Court intended that we avoid this issue when they sent the cases *sub judice* back to us for further action.

I would set aside the findings as to the conspiracy charge in each case and authorize a rehearing.

AND IT IS FURTHER ORDERED, that this case be, and the same is hereby, remanded to the Judge Advocate General of the Navy for proceedings not inconsistent with the opinion above.

WITNESS THE Clerk of the United States Navy Court of Military Review, the third day of February, in the year of Our Lord one thousand nine hundred and seventy-seven.