Opinion filed by Hutchison, Judge:
*1255 This case is before us on remand from the Court of Appeals for the District of Columbia Circuit (D.C. Circuit). That Court returned this case to us after affirming appellant Al Bahlul's conspiracy to commit war crimes conviction,[1] and vacating his convictions for solicitation and providing material support for terrorism. Al Bahlul v. United States , 767 F.3d 1, 31 (D.C. Cir. 2014) (en banc) ( Bahlul II ), aff'd en banc per curiam , 840 F.3d 757, 759 (D.C. Cir. 2016) ( Bahlul III ), cert. denied , --- U.S. ----, 138 S.Ct. 313, 199 L.Ed.2d 232 (2017).[2] The D.C. Circuit's mandate directs us "to determine the effect, if any, of the two vacaturs on sentencing." Id.
Before us, the appellant argues that his sentence is inappropriate for his remaining offense, and that we cannot be confident that, but for the error affecting his case, he would have received a sentence of confinement for life. He also raises two other issues not directly related to the D.C. Circuit's mandate: First, he challenges his remaining conviction for conspiracy to commit war crimes. He asserts that the vacatur of the two other charges casts doubt on the legality of the remaining charge, which survived the D.C. Circuit's scrutiny only because that court found that the appellant's ex post facto challenge had been forfeited. On remand, the appellant urges that our more generous scope of review allows us to perform a de novo review now, even though the D.C. Circuit has affirmed the conviction. The appellant's second new issue is a motion to dismiss his case altogether for lack of subject-matter jurisdiction. He claims that his commission lacked jurisdiction because the Convening Authority's appointment was statutorily and constitutionally improper, and that she was therefore without any authority to convene a military commission.
The government argues that we may reassess the appellant's sentence and that we should affirm the appellant's sentence to confinement for life. The government further argues that the appellant is not entitled to a de novo review of his remaining conviction, and that we should not now consider his newest challenge to the Convening Authority's appointment contending it is not jurisdictional.
Our task, then, is first to determine what arguments we may properly consider given the procedural posture of the case. We conclude that a de novo review of the appellant's remaining conviction is beyond the scope of our review on remand. We further conclude that we should consider the appellant's jurisdictional claim and his argument that his sentence is inappropriate to his remaining offense. We decide both of these issues in the government's favor.
*1256 I. Scope of review on remand
The D.C. Circuit directed us to determine the effect, if any, of the two vacaturs on the appellant's sentence. Bahlul II , 767 F.3d at 31. The two additional issues raised by the appellant-the request for a de novo review of the remaining conviction and the jurisdictional question-are not plainly within the scope of our review on remand.
A. De novo review of remaining conviction
We first ask if a de novo review of the appellant's remaining conviction is within the scope of our review. We approach this question with two closely-related concepts: the law-of-the-case doctrine and the mandate rule.
The " 'law-of-the-case' doctrine refers to a family of rules embodying the general concept that a court involved in later phases of [litigation] should not reopen questions decided ... by that court or a higher one in earlier phases." Crocker v. Piedmont Aviation , 49 F.3d 735, 739 (D.C. Cir. 1995). Our superior court further explained that:
When there are multiple appeals taken in the course of a single piece of litigation, law-of-the-case doctrine holds that decisions rendered on the first appeal should not be revisited on later trips to the appellate court. The Supreme Court has instructed the lower courts to be loathe to reconsider issues already decided in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice.
LaShawn A. v. Barry , 87 F.3d 1389, 1393 (D.C. Cir. 1996) ( LaShawn II ) (en banc) (internal citations and quotation marks omitted).
The "mandate rule is [simply] a 'more powerful version' of the law-of-the-case doctrine." Indep. Petroleum Ass'n v. Babbitt , 235 F.3d 588, 597 (D.C. Cir. 2001) (quoting LaShawn II , 87 F.3d at 1393 ). Under the mandate rule, "an inferior court has no power or authority to deviate from the mandate issued by [a superior] appellate court." Briggs v. Penn. R.R. , 334 U.S. 304, 306, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948) ; see also United States v. Kpodi , 888 F.3d 486, 491 (D.C. Cir. 2018) ("A district court commits legal error and therefore abuses its discretion when it fails to abide by ... the mandate rule."). "In long-running litigation like this, [we] are especially constrained because [we] may not 'do anything which is contrary to the letter or spirit of the mandate.' " Morley v. CIA , 894 F.3d 389, 401 (D.C. Cir. 2018) (citation omitted).
"The mandate rule has two components-the limited remand rule, which arises from action by an appellate court, and the waiver rule, which arises from action (or inaction) by one of the parties." United States v. O'Dell , 320 F.3d 674, 679 (6th Cir. 2003). Thus, the mandate rule places "two major limitations" on the scope of a remand: "any issue that could have been but was not raised on appeal is waived and thus not remanded," and "any issue conclusively decided by [the appellate court] is not remanded." United States v. Husband , 312 F.3d 247, 250-51 (7th Cir. 2002). The rule, therefore, "forecloses relitigation of issues expressly or impliedly decided by the appellate court." United States v. Ben Zvi , 242 F.3d 89, 95 (2d Cir. 2001) (citations omitted) (emphasis in original). "Likewise, where an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, the mandate rule generally prohibits [our Court] from reopening the issue on remand unless the mandate can reasonably be understood as permitting it to do so." Id. (citations omitted).
*1257 "The mandate rule serves two key interests, those of hierarchy and finality." Doe v. Chao , 511 F.3d 461, 465 (4th Cir. 2007). "A rule requiring a [lower] court to follow a [superior] court's directives that establish the law of a particular case is necessary to the operation of a hierarchical judicial system." Mirchandani v. United States , 836 F.2d 1223, 1225 (9th Cir. 1988). In our judicial hierarchy, the decisions of the D.C. Circuit bind the district courts within the circuit-and our Court-just as decisions of the Supreme Court bind the D.C. Circuit. "The principle of hierarchy is no empty shell. It protects the very value and essential nature of an appeal, namely the chance afforded litigants for review of a judgment and for correction, generally by a larger judicial body, of errors that may have serious consequences or work significant injustice." Doe , 511 F.3d at 465. With regard to finality, once the superior appellate court "determines questions put before it, the orderly resolution of the litigation requires the [lower] court to recognize those interests served by final judgments and to implement the appellate mandate faithfully." Id. at 466.
The appellant wishes to make an ex post facto challenge to his remaining conviction. He argues that the D.C. Circuit was constrained by Federal Rule of Criminal Procedure (Fed R. Crim. P.) 52 to find that this issue had been forfeited. Since we are not so constrained, argues the appellant, we should conduct a de novo review of this conviction before determining whether we should affirm his sentence.
The appellant's assertion that the scope of our review is more generous than the D.C. Circuit's is correct. The 2009 MCA § 950f(d) requires our Court to review the appellant's record for factual sufficiency and sentence appropriateness:
The Court may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as the Court finds correct in law and fact and determines, on the basis of the entire record, should be approved. In considering the record, the Court may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the military commission saw and heard the witnesses.
See also Hicks v. United States , 94 F.Supp.3d 1241, 1247 (CMCR 2015). This statutory language mirrors the language from Article 66(c), UCMJ, 10 U.S.C. § 866(c), which defines the authority exercised by the military service courts of criminal appeals. We, like the service courts of criminal appeals, may reach issues that are forfeited, or even waived. The Court of Appeals for the Armed Forces (CAAF) has interpreted this language to be a grant of an "awesome, plenary, de novo power of review." United States v. Cole , 31 M.J. 270, 272 (C.M.A. 1990). Under 2009 MCA § 948b(c), the appellate decisions from the service courts of criminal appeals and the CAAF are "instructive" but not "binding" on this Court.
Congress is presumed to know the judicial interpretation of statutory language when enacting legislation. When it later uses the same language in reenacting the statute or enacting another statute, it is understood that Congress is adopting the extant statutory interpretation. See Owens v. Republic of Sudan , 864 F.3d 751, 778 (D.C. Cir. 2017) (citing Lorillard v. Pons , 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) ); see also Johnson v. United States , 529 U.S. 694, 710, 120 S.Ct. 1795, 1806, 146 L.Ed.2d 727 (2000) ("when a new legal regime develops out of an identifiable predecessor, it is reasonable to look to the pre-cursor in fathoming the new law"). We, therefore, follow the judicial interpretation of 10 U.S.C. § 866(c) set forth above by the military appellate courts.
*1258 Though our scope of review is different from and more expansive than that of the D.C. Circuit, the government contends that the D.C. Circuit's remand to our Court limits our review to consideration of the appellant's sentence; that our plenary review under 2009 MCA § 950f(d) has already been completed; that the appellant's conviction for conspiracy to commit war crimes has been affirmed by the D.C. Circuit and is final and conclusive, pursuant to 2009 MCA § 950j;[3] and that we therefore have no authority to consider challenges to the underlying conviction at this stage in the litigation.
In United States v. Reed, 1 M.J. 1114 (N.C.M.R. 1977), the Navy Court of Military Review was tasked on remand with reassessing Reed's sentence after its superior Court, the Court of Military Appeals, set aside two of the three offenses to which Reed had pleaded guilty. Id. at 1115. On remand, Reed sought to challenge the providence of his guilty plea to the remaining charge. The Navy Court held that Reed's remaining conviction became final when its superior court affirmed the conviction and the Navy Court, therefore, had "no jurisdiction to further consider whether" Reed's conviction was "correct in law and in fact." Id.
In United States v. Smith , 41 M.J. 385 (C.A.A.F. 1995), the CAAF remanded the case for a fact-finding hearing in accordance with United States v. DuBay , 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967), to resolve concerns about the defense counsel's prior representation of a prosecution witness. Smith , 41 M.J. at 385. After the DuBay hearing was complete, the record was submitted to the service court of criminal appeals in accordance with the CAAF's order, and new appellate defense counsel raised and briefed two additional assignments of error not raised in the initial appeal before the service court. The service court declined to consider the new issues. The CAAF held that the lower court did not err by refusing to consider supplemental assignments of error beyond the scope of the remand order: "While appellant is entitled to plenary review under Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866, he is only entitled to one such review." Id. at 386.
Reed and Smith are instructive. First, just as in Reed , the appellant's conviction is final. We, therefore, have no authority at this stage of the litigation to determine-again-whether that conviction is correct in law and fact. Moreover, the appellant has had his day in our Court; although he is entitled to plenary review under 2009 MCA § 950f(d), "he is only entitled to one such review." Smith , 41 M.J. at 386. In 2011, we conducted our plenary review of the appellant's conspiracy conviction pursuant 2009 MCA § 950f(d) and affirmed the judgment of conviction. Bahlul I , 820 F.Supp.2d at 1230-31.
Thus, we have already conducted our review of the conspiracy offense, and our judgment as to it has been affirmed by the D.C. Circuit. The issue was not remanded and we have no authority to review the appellant's claims now. Husband , 312 F.3d at 251. To the extent the appellant's claims are new-and not simply a rehashing of the arguments made before this Court in his initial appeal-they are waived. See id. at 250 ("[A]ny issue that could have been but was not raised on appeal is waived and thus *1259 not remanded.") (citing United States v. Morris , 259 F.3d 894, 898 (7th Cir. 2001) ("Parties cannot use the accident of remand as an opportunity to reopen waived issues.") ).
Finally, we recognize that our superior Court may authorize us to reopen an issue by issuing a mandate that "can reasonably be understood as permitting" us to do so. Ben Zvi , 242 F.3d at 95. The appellant argues that the D.C. Circuit's mandate does just that, since his conspiracy conviction is the "sine qua non for his sentence." Appellant Corrected Mot. to Dismiss 15. We disagree. Had our superior Court wanted us to review the appellant's claim that conspiracy was not an offense triable by military commission-a claim rejected by this Court and the D.C. Circuit-they would have remanded the case with instructions to answer that very question. Instead, our superior Court's mandate was clear and unambiguous. The Court simply directed that we determine what effect, if any, the vacation of two convictions would have on the appellant's sentence. We conclude that a de novo review of the appellant's remaining conviction is beyond the scope of our permissible review.
B. Jurisdictional claim
Next we address whether we may consider the appellant's claim that the commission was not properly convened and therefore without jurisdiction.
The appellant challenges Susan Crawford's appointment to the position of Convening Authority within the Office of the Convening Authority for Military Commissions. He challenges her appointment on statutory and constitutional grounds, and further argues that Ms. Crawford's defective appointment deprived his commission of subject-matter jurisdiction in his case. In response, the government first argues that even if Ms. Crawford's appointment was infirm, this would not create a jurisdictional issue. Second, the government argues that even if the challenge to Ms. Crawford's appointment did amount to a challenge to the jurisdiction of his commission, we may not now entertain this allegation of error on remand.
We find that jurisdictional challenges are within the scope of our review and that the appellant's challenge to Ms. Crawford's appointment does in fact constitute a challenge to the commission's subject-matter jurisdiction for reasons we explain below.
As discussed above, the law-of-the-case doctrine and mandate rule generally prevent a lower court from going beyond the scope of the mandate or addressing issues on remand not previously raised during the initial appeal. And the appellant did not object to Ms. Crawford's appointment as the Convening Authority during his military commission, during his direct appeal before our Court, or before the D.C. Circuit. But jurisdiction is arguably different because it involves a "court's power to hear a given case [and] can never be waived or forfeited." United States v. Munoz Miranda , 780 F.3d 1185, 1188 (D.C. Cir. 2015) (citing Arbaugh v. Y & H Corp. , 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) ); see also Gonzalez v. Thaler , 565 U.S. 134, 141, 132 S.Ct. 641, 181 L.Ed.2d 619 (2012) ("Subject-matter jurisdiction can never be waived or forfeited. The objections may be resurrected at any point in the litigation").
Indeed, a "charge or specification shall be dismissed at any stage of the proceedings if ... [t]he military commission lacks jurisdiction to try the accused for the offense." Rule for Military Commission (R.M.C.) 907(b)(1), Manual for Military Commissions (MMC) (2007 ed.); see also R.M.C. 907(b)(1), MMC (2016 ed.) (stating same). This is so because jurisdictional *1260 limits define the foundation of judicial authority, and subject-matter jurisdiction, when questioned, must be decided before any other matter. See Steel Co. v. Citizens for a Better Env't , 523 U.S. 83, 93-95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ; In re Sealed Case , 131 F.3d 208, 210 (D.C. Cir. 1997) ("before we can legitimately decide any question, whether on interlocutory or final appeal, we, like all federal courts, 'are under an independent obligation to examine [our] own jurisdiction' ") (brackets in original; citation omitted).
Neither the Supreme Court nor our superior Court has "directly opined on how to reconcile the mandate rule with subsequent distinct challenges to ... subject matter jurisdiction, a challenge that could ordinarily be raised at any time and even sua sponte." Flame S.A. v. Freight Bulk Pte. Ltd. , 807 F.3d 572, 580 (4th Cir. 2015). But other circuit courts of appeals have. In United States v. Adesida , 129 F.3d 846, 848 (6th Cir. 1997), the Sixth Circuit Court of Appeals affirmed the district court's judgment denying a defendant's motion for a new trial after he alleged-for the first time on remand for resentencing-three separate errors with one of the charges. Before examining the merits of the defendant's motion for a new trial, the court first had to determine whether the defendant had waived his right to raise new issues after "there already ha[d] been a prior appeal of the case to the Sixth Circuit, in which the[ ] issues were not raised, and the Sixth Circuit in the prior appeal affirmed defendant's conviction." Id. at 849. Applying the law-of-the-case doctrine, the court held that the defendant waived two of the three challenges to the charge because they "could have been challenged in a prior appeal, but were not." Id. at 850. However, the court held that the third claim-alleging that the charge failed to charge an offense-had not been waived because "[i]f an indictment does not charge a cognizable federal offense, then a federal court lacks jurisdiction to try a defendant for violation of the offense." Id. (citing United States v. Armstrong , 951 F.2d 626, 628 (5th Cir. 1992) ). The court held that "[l]ack of subject-matter jurisdiction may be raised at any time in the course of a proceeding and is never waived. Matters of jurisdiction may be raised at any time, because if a court lacks subject-matter jurisdiction, it does not have the power to hear the case." Id. (citations omitted); see also Fed. R. Crim. P. 12(b)(2) ("A motion that the court lacks jurisdiction may be made at any time while the case is pending").
In the context of a civil case, the Supreme Court has opined on the timeliness of objections to subject-matter jurisdiction. In analyzing Federal Rule of Civil Procedure (Fed. R. Civ. P.) 12(h)(3),[4] the Court held that "[t]he objection that a federal court lacks subject-matter jurisdiction ... may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment. " Arbaugh , 546 U.S. at 506, 126 S.Ct. 1235 (emphasis added). We see no reason to apply R.M.C. 907(b)(1)'s language *1261 directing that a charge or specification be dismissed "at any stage of the proceeding" for lack of jurisdiction differently from the Supreme Court's application of Rule 12(h)(3)'s similar language requiring courts to dismiss an action "at any time" for lack of jurisdiction.[5]
Therefore, our consideration of R.M.C. 907(b)(1), the persuasive authority from Sixth Circuit, the Supreme Court's analysis of similar language in Federal Rule of Civil Procedure 12(h)(3), and "the duty which rests on the courts, in time of war as well as in time of peace, to preserve unimpaired the constitutional safeguards of civil liberty," Ex Parte Quirin , 317 U.S. 1, 19, 63 S.Ct. 2, 87 L.Ed. 3 (1942), convince us that we must assure ourselves that the military commission had subject-matter jurisdiction over the charged offense of which the appellant remains convicted. See Hamdan v. Rumsfeld , 548 U.S. 557, 611-12, 126 S.Ct. 2749, 165 L.Ed.2d 723 (2006) (plurality op.); id. at 683, 126 S.Ct. 2749 (Thomas, J., and Scalia, J., dissenting); see also In re Yamashita , 327 U.S. 1, 17-20, 66 S.Ct. 340, 90 L.Ed. 499 (1946) ; 10 U.S.C. § 950g(d).
Of course, deciding that the appellant may raise a jurisdictional claim is not the same thing as deciding that this claim is jurisdictional. Even though we have decided that jurisdictional claims are within the scope of our review, we must ask whether the challenge to Ms. Crawford's appointment has jurisdictional implications. The government argues that even if Ms. Crawford's appointment was defective the commission she convened would still have had subject-matter jurisdiction. We think, however, that the appellant's claim does go to the jurisdiction of appellant's commission.
The commission's jurisdiction in this case is defined first by 2006 MCA § 948d(a), which provides that "[a] military commission under this chapter shall have jurisdiction to try any offense made punishable by this chapter or the law of war when committed by an alien unlawful enemy combatant before, on, or after September 11, 2001." The government argues that this limits jurisdictional issues to just two areas: the accused's status as a person subject to Chapter 47a, and whether the offenses are made punishable by Chapter 47a. Since the appellant's motion to dismiss does not implicate either his "status or the offenses ," the government contends that the appellant "incorrectly couches [his] argument in jurisdictional terms."[6] We disagree.
Because Congress used the UCMJ as a model for the 2006 MCA, we once again turn to the UCMJ and case law interpreting it for persuasive guidance on how we should interpret provisions of the 2006 MCA. See 2006 MCA § 948b(c) (court-martial case law is instructive but not binding). Two UCMJ articles with close analogues to relevant MCA provisions inform our analysis. The first article, Article 18, UCMJ (10 U.S.C. § 818 ) defines the jurisdiction of general courts-martial in language functionally identical to 2006 *1262 MCA § 948d(a)'s treatment of military commission jurisdiction. Article 18, UCMJ provides that "general courts-martial have jurisdiction to try persons subject to this chapter for any offense made punishable by this chapter ..."-language essentially identical to that in the analogous MCA provision. The second UCMJ article, Article 22, ( 10 U.S.C. § 822 ), sets forth the officials and officers who may convene general courts-martial. This article is analogous to 2006 MCA § 948h, and this section authorizes "the Secretary of Defense or ... any officer or official of the United States designated by the Secretary" to convene military commissions.
Military courts construing Articles 18 and 22, UCMJ have for years uniformly held that courts-martial convened by an improperly appointed convening authority are "without jurisdiction to proceed and, hence, ... a nullity." United States v. Cunningham , 21 U.S.C.M.A. 144, 146, 44 C.M.R. 198, 200 (1971) (Secretary of the Navy improperly delegated to another officer authority to appoint special court-martial convening authorities); see also, e.g., United States v. Greenwell , 19 U.S.C.M.A. 460, 463, 42 C.M.R. 62, 65 (1970) ("[W]e believe that [the Secretary of the Navy's] personal action is an absolute prerequisite, we must hold that the court-martial which convicted this accused was without jurisdiction to proceed and, hence, was a nullity."). This determination reflects the fact that "[i]n the military justice system there are no standing courts." Loving v. United States , 62 M.J. 235, 254 (C.A.A.F. 2005). Indeed, "[a] court-martial is a creature of an order promulgated by an authorized commander ... which convenes, or creates, the court-martial entity. Without such an order, there is no court." United States v. Ryan , 5 M.J. 97, 101 (C.M.A. 1978) (citing Article 22, UCMJ ). So while Article 18, UCMJ, may define the jurisdiction of a general court-martial in terms of the type of offense and the status of the offender-without reference to the convening authority or referral of charges-it presupposes that a general court-martial actually exists. Thus, "[j]urisdiction depends upon a properly convened court, composed of qualified members chosen by a proper convening authority, and with charges properly referred." United States v. Adams , 66 M.J. 255, 258 (C.A.A.F. 2008).
The similarity of these two UCMJ articles and their MCA counterparts-in both language and in function-is an important indication of congressional intent. See Lorillard, 434 U.S. at 580, 98 S.Ct. 866 ("[W]here, as here, Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute."). We find that Congress intended reviewing courts to analyze the jurisdiction of military commissions in the same manner military courts review the jurisdiction of courts-martial. Like courts-martial, military commissions are ad hoc tribunals that depend on the exercise of an empowered official's authority for their existence. A military commission not convened by an official with the authority to convene one is really no commission at all and is without jurisdiction of any sort.
The regulations implementing the MCA's jurisdictional requirements reinforce our conclusion that a military commission purportedly convened by one who lacks the authority to convene them lacks jurisdiction to try anyone under the MCA. Rule for Military Commission (R.M.C.) 201(b)(3), MMC (2007, ed.) was in effect at the time the appellant's charges were referred and tried. It reads: "for a military commission to have jurisdiction: (A) The military commission must be convened by an official empowered to convene it;" and "(C) Each charge before the military commission *1263 must be referred to it by a competent authority[.]"[7] These requirements mirror Rule for Courts-Martial ( R.C.M.) 201(b), Manual for Courts-Martial (MCM), United States, (2019 ed.), which prescribes the requirements for court-martial jurisdiction.[8]
We conclude that the appellant's challenge to Ms. Crawford's authority to convene military commissions is a jurisdictional challenge, and that as such it is properly within the scope of our review.[9]
II. Motion to Dismiss for Lack of Subject-Matter jurisdiction
Having determined that the appointment of the convening authority implicates the military commission's subject-matter jurisdiction to try the appellant, we next turn to the merits of the appellant's motion and determine whether Ms. Crawford was properly appointed as the Convening Authority. The appellant contends that Ms. Crawford was improperly appointed as the Convening Authority, and thus his military commission lacked subject-matter jurisdiction to try him. Specifically, the appellant's argument is two-fold. First he argues that pursuant to the Appointments Clause, the convening authority is a principal officer that must be appointed by the President with the advice and consent of the Senate. Alternatively, he argues that 2006 MCA § 948h requires that the convening authority for military commissions be either "the Secretary of Defense or any officer or official of the United States designated by the Secretary of Defense" and that Ms. Crawford was neither an "officer" nor an "official" when she was appointed by the Secretary. We review appellant's claim that his military commission lacked subject-matter jurisdiction de novo. Paralyzed Veterans of Am. v. United States DOT , 909 F.3d 438, 443 (D.C. Cir. 2018) ; Schnitzler v. United States , 761 F.3d 33, 37 (D.C. Cir. 2014).
A. Background
One week after the September 11, 2001, attacks on the United States, Congress passed the Authorization for Use of Military Force resolution (AUMF). Pub. L. No. 107-40, 115 Stat. 224 (2001). The AUMF authorized the President to "use all necessary and appropriate force against *1264 those nations, organizations, or persons he determines planned, authorized, committed, or aided the terrorist attacks." Id. In a November 13, 2001 order the President "vested in the Secretary of Defense the power to appoint military commissions to try individuals subject to the Order," and that power was then delegated to the Appointing Authority. Hamdan , 548 U.S. at 568-69, 126 S.Ct. 2749.[10]
On January 5, 2007, Deputy Secretary of Defense Gordon England established the position of Director, Office of the Convening Authority, as a "special sensitive" position, and on January 18, 2007, that position was certified.[11] The position was designated as a general, managerial position in the Senior Executive Service.[12] On January 31, 2007, Ms. Crawford was appointed as a limited-term appointee in the Senior Executive Service as the Director, Office of the Convening Authority.[13]
On February 6, 2007, Secretary of Defense Robert M. Gates appointed Ms. Crawford, "currently the Director of the Office of the Convening Authority" as "the Convening Authority for Military Commissions."[14] On April 27, 2007, the Deputy Secretary of Defense promulgated the Regulation for Trial by Military Commission (RTMC). The 2007 RTMC, paragraph 2-1 provides:
The Office of the Convening Authority for Military Commissions is established in the Office of the Secretary of Defense under the authority, direction, and control of the Secretary of Defense. The Office of the Convening Authority shall consist of the Director of the Office of the Convening Authority, the Convening Authority ....[15]
On February 26, 2008, Ms. Crawford convened a military commission to try Al Bahlul. Al Bahlul was tried on May 7, August 15, September 24, and October 27 to November 3, 2008. On June 3, 2009, Ms. Crawford approved the findings and sentence of Al Bahlul's military commission. She served as Convening Authority for military commissions until January 30, 2010.[16]
*1265 B. Discussion
The appellant challenges Ms. Crawford's appointments as the Director, Office of the Convening Authority and Convening Authority, on statutory and constitutional grounds. We first address whether Ms. Crawford's appointments comply with 2006 MCA § 948h, and then consider whether the Constitution's requirements were satisfied.
(1) Appointment of Convening Authority under 2006 MCA § 948h
Section 948h of the 2006 MCA states "Military commissions under [ 10 U.S.C. §§ 948a et seq. ] may be convened by the Secretary of Defense or by any officer or official of the United States designated by the Secretary for that purpose."[17] At the time Ms. Crawford was appointed to be the Convening Authority, she was already the Director, Office of the Convening Authority. First, we assess whether Ms. Crawford was properly appointed to the position of Director, Office of the Convening Authority, and then we determine whether her appointment to this position resulted in her being an "officer or official of the United States."
(a) Authority of Deputy Secretary of Defense to appoint the Director, Office of the Convening Authority
As noted above, Ms. Crawford was appointed by the Deputy Secretary of Defense on January 31, 2007, as Director, Office of the Convening Authority. Then, six days later, the Secretary of Defense appointed her to be the Convening Authority. Subject to the direction of the President, the Secretary of Defense has "has authority, direction, and control over the Department of Defense." 10 U.S.C. § 113(b). Consequently, "[u]nless specifically prohibited by law, the Secretary may, without being relieved of his responsibility, perform any of his functions or duties, or exercise any of his powers through, or with the aid of, such persons in, or organizations of, the Department of Defense as he may designate." 10 U.S.C. § 113(d). Part of the Secretary's duties include ensuring the employment of necessary civilian employees "to carry out the functions and activities of the department." 10 U.S.C. § 129(b).
"The Deputy Secretary shall perform such duties and exercise such powers as the Secretary of Defense may prescribe." 10 U.S.C. § 132(b). The Secretary of Defense delegated to the Deputy Secretary of Defense the "full power and authority to act for the Secretary of Defense and to exercise the powers of the Secretary of Defense upon any and all matters concerning which the Secretary of Defense is authorized to act pursuant to law."[18] The Deputy Secretary of Defense is authorized to make "specific" further delegations as necessary.[19] This includes delegating authority to the Convening Authority and the Director, Office of the Convening Authority. Nothing in the 2006 MCA, any version of the MMC, or any version of the RTMC specifically or expressly limits the authority of the Deputy Secretary of Defense to exercise the authority delegated to him with respect to matters affecting military commissions that we address.
Accordingly, the Deputy Secretary had authority to appoint Ms. Crawford as the Director, Office of the Convening Authority.
*1266 (b) Status of the position Director, Office of the Convening Authority
Under 2006 MCA § 948h only the Secretary of Defense or an "officer or official of the United States designated by the Secretary" is empowered to convene a military commission. The appellant argues that Ms. Crawford was neither an officer nor an official of the United States but rather merely an employee of the United States ineligible to be appointed as the Convening Authority pursuant to § 948h. Therefore, we next examine whether, as Director, Office of the Convening Authority, Ms. Crawford was an "officer or official of the United States" or merely a government employee.
Citing 10 U.S.C. § 101(b)(1), the appellant argues that for purposes of Title 10, officer means only "a commissioned or warrant officer." Appellant Corrected Mot. to Dismiss 9. Similarly, he argues that an official is simply one who "holds or is invested with an office and is roughly synonymous with the term officer." Id. at 9-10 (quoting Tanvir v. Tanzin , 894 F.3d 449, 461 (2d Cir. 2018) (internal quotation marks omitted) ). The appellant points to the UCMJ and argues that "Congress made the ability to serve as a convening authority, an ancillary duty germane to the most senior positions of authority and command" and cannot, therefore, be delegated to mere government employees. Id. at 10 (citing United States v. Grindstaff , 45 M.J. 634, 636 (N-M. Ct. Crim. App. 1997) ). As a result, the appellant contends that the person designated to serve as Convening Authority in the Secretary's stead-whether a military officer or a civilian official-must "by statute, be an officer of the United States for Appointments Clause purposes." Id.
From the context of 2006 MCA § 948h, it is unlikely Congress intended officers and officials to have the same meaning. We apply the rule against surplusage, that is, we " 'give effect, if possible, to every clause and word of a statute.' " TRW Inc. v. Andrews , 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (quoting Montclair v. Ramsdell , 107 U.S. 147, 152, 2 S.Ct. 391, 27 L.Ed. 431 (1883) ). As a result, we interpret the term "officers or officials of the United States" as describing two categories of individuals-officers and officials-each with a distinct meaning. See McDonnell v. United States , --- U.S. ----, 136 S.Ct. 2355, 2369, 195 L.Ed.2d 639 (2016) (finding that two similar words have distinct meanings, which is consistent "with the presumption 'that statutory language is not superfluous.' " (citation omitted) ). We should avoid a reading that would render any portion of the statute inoperative or superfluous.
Title 10 U.S.C.A., § 101(b) defines certain terms "relating to military personnel." "The term 'officer' means a commissioned or warrant officer." § 101(b)(1). Appellant contends that officer, as used in 2006 MCA § 948h, refers to a military officer and not a civilian official. Another reading of the statute is that the definition applies only if the term officer, contextually, refers to "military personnel." Accordingly, perhaps officer as used in 2006 MCA § 948h means "any appointee exercising significant authority pursuant to the laws of the United States ... and must, therefore, be appointed in the manner prescribed by [the Appointments Clause]." Buckley v. Valeo , 424 U.S. 1, 126, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). "The Appointments Clause provides the exclusive process for appointing 'Officers of the United States.' " Lucia v. SEC , --- U.S. ----, 138 S.Ct. 2044, 2056, 201 L.Ed.2d 464 (2018) (Thomas & Gorsuch, JJ., concurring). Pursuant to the Appointments Clause, "principal officers must be nominated by the President and confirmed by the Senate, [and] Congress can authorize the appointment of 'inferior Officers' by 'the President alone,' 'the Courts *1267 of Law,' or 'the Heads of Departments.' " Id. (quoting U.S. Const., Art. II, § 2, cl. 2 ). Since Ms. Crawford was not appointed as Director, Office of Military Commissions by the President, a Court of Law, or the Head of a Department, her appointment to that position would not be consistent with the Appointments Clause. But for the purposes of our inquiry here, we need not decide whether Ms. Crawford was an officer for purposes of § 948h because we specifically find that as Director, Office of Military Commissions she was an "official of the United States."
First, we reject the appellant's contention that an "official of the United States" means "an officer of the United States for Appointments Clause purposes." Appellant Corrected Mot. to Dismiss 10. The appellant provides no case law or other authoritative support for this assertion. As we noted above, the term "official" in the statute must mean something different that the term "officer." Had Congress desired to limit delegation of convening authority duties to only existing "officers of the United States for Appointments Clause purposes," it could have expressly done so. Alternatively, it could have simply limited appointment to "officers of the United States," and we would then concern ourselves with whether this term embraced both military officers and those civilian officers "exercising significant authority pursuant to the laws of the United States." Buckley , 424 U.S. at 126, 96 S.Ct. 612. But Congress included the term "official." In United States v. Germaine, 99 U.S. 508, 25 L.Ed. 482 (1879), the Supreme Court held that a law criminalizing extortion by "officers of the United States" did not apply to a government physician because he was not appointed pursuant to the Appointments Clause and was not, therefore, an "officer of the United States." In reaching this conclusion, the Court explained that had Congress intended the law to reach any "person in the service or employment of the government," then "words to that effect would be used." Id. at 510. In the 2006 MCA, Congress did use words to that effect. By including official in § 948h, Congress expressly broadened the pool of people beyond "Officers of the United States" that the Secretary could designate as the convening authority.
Next, because the term "official of the United States" is not defined in the 2006 MCA or elsewhere within Title 10, we "construe it in accord with its ordinary or natural meaning." Smith v. United States , 508 U.S. 223, 228, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993). When a statute fails to define terms, a dictionary may be an appropriate source for determining a word's ordinary meaning. See Muscarello v. United States , 524 U.S. 125, 128, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998) (emphasizing first dictionary definition as supplying "the word's primary meaning"); Noel Canning v. NLRB , 705 F.3d 490, 505, 509 (D.C. Cir. 2013) (applying dictionary definitions). Black's Law Dictionary defines official as "[s]omeone who holds or is invested with a public office; a person elected or appointed to carry out some portion of a government's sovereign powers." Official , Black's Law Dictionary [1259] (10th ed. 2014).
Support for this broad definition of "official of the United States" is found in the term's widespread use in other federal statutes. For example, an "official of the United States" may be authorized to inspect poultry and eggs. See 21 U.S.C. §§ 453(k), 1033(k)(1). Likewise, no person in charge of a tuna fishing vessel shall "fail to stop upon being hailed by a duly authorized official of the United States." 16 U.S.C. § 957(b). The U.S. Code is replete with other examples.[20] Even within Title *1268 10, the term is used to describe those individuals who determine whether information is classified. 10 U.S.C. § 801(15)(A). In sum, the term "official of the United States" is widely used to describe the government agents and employees doing a myriad of often mundane acts that carry out some measure of sovereign power, but whose duties do not include "exercising significant authority pursuant to the laws of the United States" and who are, therefore, not officers of the United States for Appointments Clause purposes. Buckley , 424 U.S. at 126, 96 S.Ct. 612.
As the Director, Office of the Convening Authority, Ms. Crawford held a special sensitive, national security position and had authority to carry out some portion of the federal government's sovereign powers. Ms. Crawford was a member of the Senior Executive Service, and she had a responsibility to ensure that the executive management of the Office of the Convening Authority was responsive to the needs, policies, and goals of the nation.
We conclude, therefore, that Ms. Crawford, as the Director, Office of the Convening Authority, was an official of the United States when the Secretary of Defense designated her as the Convening Authority. We next examine Ms. Crawford's position as Convening Authority.[21]
(2) Status of the Convening Authority position under the Appointments Clause
As a threshold matter, we have no doubt that while serving as the Convening Authority and convening the appellant's military commission and taking action in approving its findings, Ms. Crawford was acting as an "officer of the United States" for Appointments Clause purposes. First, Ms. Crawford, as the Convening Authority, held a "continuing office established by law," specifically § 948h.[22] Lucia , 138 S.Ct. at 2053. Second, she exercised "significant discretion" in "carrying out the ... important functions," of convening the appellant's military commission, referring his charges to trial, assigning members, and taking action on the findings and sentence. Id. As the Supreme Court recently made clear in Lucia , an adjudicative official with the scope of judicial and prosecutorial discretion enjoyed by the convening authority must be appointed in conformity with the Appointments Clause. Id. at 2052-53.
*1269 Again, while principal officers must be nominated by the President and confirmed by the Senate, Congress can authorize the heads of the department-such as the Secretary of Defense-to appoint inferior officers. The question before us then is whether the convening authority must be a principal officer. The appellant contends that given the nature of the convening authority's responsibility and the "significant and unreviewable discretion" the convening authority exercises, the convening authority is a principal officer that must be nominated by the President and confirmed by the Senate. Appellant Corrected Mot. to Dismiss 13. And since Ms. Crawford was only appointed by the Secretary of Defense, the appellant argues, her appointment was invalid and she could not, therefore, convene the appellant's military commission.
We recognize that "[t]he line between 'inferior' and 'principal' officers is one that is far from clear." Morrison v. Olson , 487 U.S. 654, 671, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988). A review of Appointments Clause challenges to courts-martial personnel is instructive. The Supreme Court first examined an Appointments Clause challenge to a court-martial in Weiss v. United States, 510 U.S. 163, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994). In Weiss , the petitioner argued that the trial and appellate judges that presided over his court-martial and subsequent appeal were "principal officers" and were not appointed pursuant to the Appointments Clause. The Court held that because the challenged military judges were all commissioned officers who had already been appointed by the President with the advice and consent of the Senate, they did not require a second appointment as a military judge. Id. at 176, 114 S.Ct. 752. In reaching this conclusion, Chief Justice Rehnquist, writing for the majority, did not distinguish between "inferior" or "principal" officers. However, Justice Souter, in his concurrence, opined that "[s]ince the chosen method for selecting military judges shows that neither Congress nor the President thought military judges were principal officers, and since in the presence of doubt deference to the political branches' judgment is appropriate, ... military judges are inferior officers for purposes of the Appointments Clause." Id. at 194, 114 S.Ct. 752 (Souter, J. concurring).
Since Weiss , the CAAF and the service courts of criminal appeals have routinely rejected Appointments Clause challenges to convening authorities, military judges, and military appellate judges from performing their duties under the UCMJ. See, e.g., United States v. Akbar , 74 M.J. 364, 415 (C.A.A.F. 2015) (challenging appellate judges); United States v. Hennis , 75 M.J. 796, 853 (A. Ct. Crim. App. 2016) (en banc) (same); United States v. Parker , 71 M.J. 594, 630 & n.44 (N-M. Ct. Crim. App. 2012) (challenging the military judge and convening authority); United States v. Grindstaff, 45 M.J. 634, 636 (N-M. Ct. Crim. App. 1997) (per curiam) (challenging the military judge, appellate judges, and the convening authority); United States v. Grey , 1997 CCA LEXIS 198, *20 & n.9 (N-M. Ct. Crim. App. 1997) (same). These cases largely relied on the fact that the "officer" being challenged was a commissioned officer who did not require a second appointment.
However, in Edmond v. United States , 520 U.S. 651, 666, 117 S.Ct. 1573, 137 L.Ed.2d 917 (1997), the Supreme Court held that civilian judges on the Coast Guard Court of Criminal Appeals were "inferior officers" under the Appointments Clause. The Court first noted the "importance of the responsibilities that [the] judges bear," but explained that the "exercise of 'significant authority pursuant to the laws of the United States' marks, not the line between principal and inferior officer *1270 for Appointments Clause purposes, but rather ... the line between officer and non-officer." Id. at 662, 117 S.Ct. 1573 (quoting Buckley , 424 U.S. at 126, 96 S.Ct. 612 ). Therefore, we must look beyond the mere scope and importance of the convening authority's duties to determine whether the convening authority is a principal or inferior officer.
In concluding that civilian Coast Guard appellate judges were inferior officers, the Court emphasized two factors. First, the appellate judges are supervised by other Executive Department officers and by CAAF, an Executive Department entity. Id. at 664, 117 S.Ct. 1573 (citations omitted). This "administrative supervision of these judges by the Judge Advocate General of the Coast Guard, combined with his power to control them by removal from a case, establishes that the intermediate appellate judges here have the necessary superior" to render them inferior officers. Id. at 667, 117 S.Ct. 1573 (Souter, J. concurring). Second, another executive branch entity, CAAF, has the power to reverse the judges' decisions. Id. at 665, 117 S.Ct. 1573 (citations omitted). Thus, the judges did not have the "power to render a final decision on behalf of the United States unless permitted to do so by other Executive officers." Id.
In addressing an Appointments Clause question involving Copyright Royalty Judges (CRJ), our superior Court held that CRJs were principal officers, but noted that the power of a supervising officer to remove them without cause would be sufficient to conclude that those judges were "inferior officers" notwithstanding additional Edmond s factors that tended to make them principal officers. Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd. , 684 F.3d 1332, 1341 (D.C. Cir. 2012). See also In re Al-Nashiri , 791 F.3d 71, 83 (D.C. Cir. 2015) (observing that "The CRJs' for-cause removal protection is not 'generally consistent with the status of an inferior officer.' "). Thus, a supervising officer's power to terminate without cause may be dispositive. We begin there.
The convening authority for military commissions is both appointed by the Secretary of Defense, 2006 MCA § 948h, and subject to removal by the Secretary without cause. See Myers v. United States , 272 U.S. 52, 119, 47 S.Ct. 21, 71 L.Ed. 160 (1926) ("the power of appointment carried with it the power of removal"); Kalaris v. Donovan , 697 F.2d 376, 401 (D.C. Cir. 1983) ("The long standing rule relating to the removal power is that, in the face of congressional silence, the power of removal is incident to the power of appointment."). "The power to remove officers ... is a powerful tool for control." Edmond , 520 U.S. at 664, 117 S.Ct. 1573. In fact, the Secretary of Defense recently exercised this powerful tool and removed the convening authority.[23] Thus, the Secretary of Defense had the power to remove Ms. Crawford as the Convening Authority without cause. This power alone is instructive if not dispositive. But there are also additional Edmond s factors that support a conclusion that Ms. Crawford is an inferior officer.
The convening authority acts "under the authority, direction, and control of the Secretary of Defense." 2007 RTMC, paragraph 2-1. Ms. Crawford as the Convening Authority, therefore, was "supervised at some level" by an officer "appointed by presidential nomination with the advice and consent of the Senate"-the Secretary of Defense. Edmond , 520 U.S. at 663, 117 S.Ct. 1573. This supervision includes regulations promulgated by the Secretary, *1271 pursuant to 2006 MCA § 949a, that directly control the convening authority's substantive conduct in certain respects and reserves to the Secretary the right to disregard and supersede certain of her actions.[24] Thus, as Justice Souter pointed out in Edmond s , administrative supervision and the power to remove renders the convening authority an inferior officer. Edmond , 520 U.S. at 667, 117 S.Ct. 1573 (concurring opinion).
Finally, like the Coast Guard appellate judges in Edmond , whose decisions were subject to review by the CAAF, a court within the executive branch, the convening authority's decisions are subject to review by our Court-another executive branch court. Therefore, the convening authority has "no power to render a final decision on behalf of the United States unless permitted to do so by other executive officers." Id. at 665, 117 S.Ct. 1573.
Consequently, we conclude the convening authority is an inferior officer.
Since Congress authorized the appointment of the convening authority by the Secretary of Defense in 2006 MCA § 948h, and the Secretary of Defense did appoint Ms. Crawford as the Convening Authority, she had authority, as an inferior officer of the United States to convene the appellant's military commission. Therefore, the commission had subject-matter jurisdiction to try the appellant for his offenses.
III. Effect of Vacatur on the Sentence
The D.C. Circuit affirmed the appellant's conviction under Charge I (conspiracy to commit war crimes) and vacated his convictions under Charges II (solicitation of others to commit war crimes) and III (providing material support for terrorism). We must now decide what effect, if any, our superior Court's vacatur of these two charges has on the appellant's sentence. Once again, we turn to court-martial jurisprudence to examine the scope of our authority.
First, in Jackson v. Taylor , 353 U.S. 569, 77 S.Ct. 1027, 1 L.Ed.2d 1045 (1957), the Supreme Court upheld the authority of military appellate courts to conduct sentence reassessments. Jackson had been convicted at court-martial of premeditated murder and attempted rape, and had received a sentence of life in prison. Id. at 570, 77 S.Ct. 1027. After the "board of review" (the precursor to the service courts of criminal appeals) set aside the murder conviction, it reassessed the sentence and affirmed a sentence of 20 years' imprisonment. Id. at 572, 77 S.Ct. 1027. Jackson argued before the Supreme Court that he should have been afforded a sentence rehearing. Id. In rejecting Jackson's argument, the Supreme Court relied on the board of review's statutory authority, pursuant to Article 66(c), UCMJ as it then existed to "affirm only ... the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Id. at 573, 77 S.Ct. 1027. The Court also observed the difficulties inherent in court-martial sentence rehearings, explaining that "[a] court-martial *1272 has neither continuity nor situs and often sits to hear only a single case. Because of the nature of military service, the members of a court-martial may be scattered throughout the world within a short time after a trial is concluded." Id. at 579, 77 S.Ct. 1027.
Next, in United States v. Sales, 22 M.J. 305 (C.M.A. 1986), the Court of Military Appeals further explained the authority of the service courts of criminal appeal to reassess a sentence because of prejudicial error:
[The court's] task differs from that which it performs in the ordinary review of a case. Under Article 66, [UCMJ], 10 U.S.C. § 866, the Court of [Criminal Appeals] must assure that the sentence adjudged is appropriate for the offenses of which the accused has been convicted; and, if the sentence is excessive, it must reduce the sentence to make it appropriate. However, when prejudicial error has occurred in a trial, not only must the Court of [Criminal Appeals] assure that the sentence is appropriate in relation to the affirmed findings of guilty, but also it must assure that the sentence is no greater than that which would have been imposed if the prejudicial error had not been committed. Only in this way can the requirements of Article 59(a), UCMJ, 10 U.S.C. § 859(a), be reconciled with the Code provisions that findings and sentence be rendered by the court-martial, see Articles 51 and 52, UCMJ, 10 U.S.C. §§ 851 and 852, respectively.
Id. at 307-08.
Finally, in United States v. Winckelmann , 73 M.J. 11 (C.A.A.F. 2013), the CAAF, building upon Jackson and Sales , announced factors or "points of analysis" for the service courts of criminal appeals "to consider when determining whether to reassess a sentence or order a rehearing." Id. at 15. These four, "illustrative, but not dispositive" factors are:
(1) Whether there has been a "dramatic change[ ] in the penalty landscape or exposure." Id. at 15.
(2) Whether sentencing was by members or a military judge alone. Id. at 16.
"(3) Whether the nature of the remaining offenses capture the gravamen of criminal conduct included within the original offenses ... and whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses." Id.
"(4) Whether the remaining offenses are of the type [with which appellate judges] should have the experience and familiarity ... to reliably determine what sentence would have been imposed at trial." Id.
We find Winckelmann persuasive and adopt its factors for determining whether we can reassess the appellant's sentence. First, our responsibility in 2009 MCA § 950f(d) to "affirm only ... the sentence or such part or amount of the sentence, as the Court finds correct in law and fact and determines, on the basis of the entire record, should be approved" is nearly identical to the service courts of criminal appeals' task under Article 66(c), UCMJ. Second, 2009 MCA § 950a mirrors Article 59, UCMJ, and therefore our ability to reassess a sentence necessarily includes the requirement that any reassessed sentence "is no greater than that which would have been imposed if the prejudicial error had not been committed." Sales , 22 M.J. at 308. We find that we may properly reassess the appellant's sentence if we are able to "reliably determine" that, absent the convictions for solicitation of others to commit war crimes and providing material support to terrorism, the "sentence would have been at least of a certain magnitude." See Winckelmann , 73 M.J. at 15.
*1273 Under all the circumstances presented, we find that we can reassess the appellant's sentence, and it is appropriate for us to do so. Although sentencing by the military judge alone was not an option under the 2006 MCA, the other factors favor reassessment by this Court. First, the penalty landscape has not dramatically changed. Although two of the three offenses for which the appellant was convicted have been vacated, the maximum punishment for the appellant's remaining conviction remains confinement for life.
Second, and most importantly, the remaining offense-conspiracy to commit war crimes-captures the gravamen of the criminal conduct at issue. Specifically, the members found beyond reasonable doubt that the appellant entered into an agreement to, among other things, murder protected persons.[25] In furtherance of the conspiracy, the members concluded that the appellant committed several overt acts, including: traveling to Afghanistan with the purpose of joining al Qaeda; undergoing military training at an al Qaeda sponsored training camp; pledging fealty to al Qaeda leader Usama bin Laden; preparing various propaganda videos to solicit support for al Qaeda and to indoctrinate al Qaeda personnel; acting as personal secretary and media secretary to Usama bin Laden; arranging for two of the 9/11 hijackers to pledge fealty to Usama bin Laden; preparing propaganda declarations or "Martyr Wills" for the two 9/11 hijackers; and researching the economic effects of the 9/11 attacks. Bahlul I , 820 F.Supp.2d at 1222.
These overt acts in support of the conspiracy charge were the same overt acts the members found in support of Charge III (providing material support to terrorism). Moreover, in Charge II (solicitation) the members found that Al Bahlul urged others to commit the same crimes he conspired to commit in Charge I. Thus, any evidence presented to establish Charges II and III was also admissible to establish Charge I.
Finally, although the appellant's conviction for conspiracy to commit war crimes remains the only such conviction of its kind reviewed by our Court, we recognize, as we stated above, that "one of the conspiracy's object offenses was the murder of protected persons." Bahlul II, 767 F.3d at 22. Conspiracy to commit murder is not so novel a crime that we are unable to "reliably determine what sentence would have been imposed at trial." Winckelmann, 73 M.J. at 16.
Taking these facts as a whole, as well as the entire record of the appellant's trial, we are confident that, absent the error, the members would have sentenced the appellant to confinement for life. We also find that sentence to be an appropriate punishment for the sole remaining conviction and this offender-thus satisfying the requirement for a reassessed sentence to be both purged of error and appropriate for the offense involved. Sales , 22 M.J. at 308. In reaching this conclusion that confinement for life is an appropriate sentence for this offender and his offense, we have considered-and rejected-the appellant's renewed claims that a sentence to life in prison is inappropriately severe. As we noted in our original review of the appellant's conviction, "[t]he nature and seriousness" of the conspiracy offense is manifest *1274 in the charge itself. Bahlul I , 820 F.Supp.2d at 1260. The objects of the conspiracy charge included committing murder and attacking civilians. Undeniably, the appellant's overt acts in furtherance of the conspiracy made valuable contributions to the conspiracy and to al Qaeda. As a result, in fulfilling our "judicial function of assuring that justice is done and that the [appellant] gets the punishment he deserves," we affirm a sentence of confinement for life. United States v. Healy , 26 M.J. 394, 395 (C.M.A. 1988).
IV. Conclusion
The appellant's and appellee's motions to consider various briefs and attachments are GRANTED .
The appellant's motions to dismiss the charge based on his challenges to the appointment of the Convening Authority are DENIED.
The sentence is AFFIRMED .

Appellant was tried and sentenced in 2008 for violating § 950u of the 2006 Military Commissions Act (MCA), Pub. L. No. 109-366, 120 Stat. 2600.United States v. Al Bahlul , 820 F.Supp.2d 1141, 1156-58 (CMCR 2011) (en banc) (Bahlul I ), Al Bahlul v. United States , 767 F.3d 1, 31 (D.C. Cir. 2014) (en banc) (Bahlul II ), aff'd en banc per curiam , 840 F.3d 757, 759 (D.C. Cir. 2016) (Bahlul III ), cert. denied , --- U.S. ----, 138 S.Ct. 313, 199 L.Ed.2d 232 (2017).

The court held that "any Ex Post Facto clause error in trying Bahlul on conspiracy to commit war crimes [was] not plain." Id. at 27. In a subsequent opinion, the court rejected Al Bahlul's additional arguments "that Articles I and III of the Constitution bar Congress from making conspiracy an offense triable by military commission, because conspiracy is not an offense under the international law of war" and, once again affirmed his conviction for conspiracy to commit war crimes. Bahlul III , 840 F.3d at 758.

See also Rule for Military Commission (R.M.C.) 1209, Manual for Military Commissions (2016 ed.) ("A military commission conviction is final when review is completed by the United States Court of Military Commission Review and ... (b) the conviction is affirmed by the United States Court of Appeals for the District of Columbia Circuit and a writ of certiorari ... is denied by the United States Supreme Court[.]").

The current rule directs that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). When the Supreme Court decided Arbaugh , the version of the rule in effect read, "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Arbaugh v. Y & H Corp. , 546 U.S. 500, 506-07, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (quoting Fed. R. Civ. P. 12(h)(3) (2000 ed.) ). The Rule was amended in 2007 "to make [it] more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only." Fed. R. Civ P. 12, Committee Notes on Rules, 2007 Amendment.

We have found only one service court case that deals with whether a service court of criminal appeals could entertain a challenge to subject-matter jurisdiction after a conviction had become final. In United States v. Claxton , 34 M.J. 1112 (C.G.C.M.R. 1992), the Coast Guard Court of Military Review held that it did not have the authority to entertain the challenge. However, the court provided no substantive analysis regarding its lack of authority to review a subject matter-jurisdiction challenge, and cited only one case, and it did not address the issue. Thus, we do not find Claxton persuasive for our purposes.

Government Opposition to Motion to Dismiss (Aug. 6, 2018), at 8 (quoting United States v. Al-Nashiri , 191 F.Supp.3d 1308, 1316 (CMCR 2016) ) (brackets and ellipses omitted).

The 2016 version of the MMC is currently in effect, and R.M.C. 201(b)(1) and (3), MMC (2016 ed.), contain these same two provisions.

R.C.M. 201(b) requires that "for a court-martial to have jurisdiction ... (1) The court-martial must be convened by an official empowered to convene it;" and "(3) Each charge before the court-martial must be referred to it by competent authority[.]"

The government argues, citing Freytag v. Commissioner , 501 U.S. 868, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991) and Lucia v. SEC , --- U.S. ----, 138 S.Ct. 2044, 201 L.Ed.2d 464 (2018), that appellant's Appointments Clause challenge to Ms. Crawford as the Convening Authority is not a jurisdictional challenge, and, in any event, the challenge was forfeited because it was not timely raised. In other contexts, those arguments appear to have significant force. See Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd. , 574 F.3d 748, 755-56 (D.C. Cir. 2009) ("Royalty Logic has forfeited its [Appointments Clause] argument by failing to raise it in its opening brief.... An Appointments Clause challenge is 'nonjurisdictional,' [Freytag , 501 U.S.] at 878, 111 S.Ct. 2631 (majority opinion), and thus not subject to the axiom that jurisdiction may not be waived"). Here, however, the military commission does not exist and is without any jurisdiction whatsoever unless and until convened by someone with authority to convene it. If there is a defect in Ms. Crawford's appointment as convening authority, then she was powerless to convene the commission. The nature of the defect does not matter. Accordingly, the appellant's Appointments Clause challenge to Ms. Crawford-which we reject-is merely the predicate to appellant's claim that the military commission lacked jurisdiction to try him.

The Appointing Authority was the predecessor to the Convening Authority.

Appellant Corrected Mot. to Dismiss at Attach. B (Position Description (Jan. 5, 2007) ).

Id . See also 5 U.S.C. § 3132(a)(2) (A Senior Executive Service position is a senior position in an agency, "which is not required to be filled by an appointment by the President by and with the advice and consent of the Senate, and in which the employee: (A) directs the work of an organizational unit; (B) is held accountable for the success of one or more specific programs or projects; (C) monitors progress toward organizational goals and periodically evaluate[s] and makes appropriate adjustments to such goals; (D) supervises the work of employees other than personal assistants; or (E) otherwise exercises important policy-making, policy-determining, or other executive functions[.]").

Appellant Corrected Mot. to Dismiss at Attach. C (Notification of Personnel Action (effective Jan. 31, 2007) ). See also 5 U.S.C. § 3132(a)(5) (A "limited term appointee" is "an individual appointed under a nonrenewable appointment for a term of 3 years or less to a Senior Executive Service position the duties of which will expire at the end of such term.").

Appellant Corrected Mot. to Dismiss at Attach. A.

The RTMC was not in existence when Ms. Crawford was appointed as either the Director, Office of the Convening Authority or as the Convening Authority. It was in effect when Ms. Crawford, as Convening Authority referred Al Bahlul's charges to trial by military commission. The 2007 version of the RTMC describes the duties and responsibilities of the Office of the Convening Authority.

Appellant Corrected Mot. to Dismiss at Attach. E, (Notification of Personnel Action (effective Jan. 30, 2010) ).

(Emphasis added). 2009 MCA § 948h, Pub. L. No. 111-84, 123 Stat. 2576, contains the same provision as 2006 MCA § 948h, Pub. L. No. 109-366, 120 Stat. 2600.

Dept. of Def. Dir. 5105.02, Deputy Secretary of Defense, ¶ 1.2 (Jan. 9, 2006).

Id. at ¶ 1.3.

See, e.g., ; 16 U.S.C. § 6906(a)(13) (making it unlawful "to fail to stop a vessel upon being hailed and instructed to stop by a duly authorized official of the United States ...."); 18 U.S.C. § 201(a)(1) ("[T]he term 'public official' [includes] ... an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch of Government, or a juror"); 31 U.S.C. § 3341(a) ("A disbursing official of the United States Government may sell [or dispose of] a Government [security] ..., only if the official deposits ... the proceeds in the Treasury or with a depositary for the credit of the Government."); 31 U.S.C. § 3342(a)(3)(B) ("A disbursing official of the United States Government may" cash certain checks of U.S. citizens overseas.); 46 U.S.C. § 31322(f)(1)(D) ("A mortgage trustee may hold ... evidence of indebtedness, secured by a mortgage of the vessel to the mortgage trustee, provided that the mortgage trustee-- ... (D) is subject to supervision or examination by an official of the United States Government or a State").

We distinguish between Ms. Crawford's status as Director, Office of the Convening Authority, a Senior Executive Service position within the Department of Defense, discussed supra part II.B.(1)(b), and her appointment as the Convening Authority for Military Commissions. Though occupied by the same individual, the positions are distinct.

The Office of Legal Counsel has defined a "continuing" federal office to be "either that the position is permanent or that, even though temporary, it is not personal, transient, or incidental." Officers of United States within the of Meaning of the Appointments Cl. , 2007 OLC LEXIS 3, *10-11, 73-74 (citations omitted; internal quotation marks omitted).

See Carol Rosenberg, Secretary of Defense fires Guantanamo war court overseer , Miami Herald (Feb. 5, 2018), https://www.miamiherald.com/news/nation-world/world/americas/guantanamo/article198456714.html (last visited Mar. 10, 2019).

See, e.g. , R.M.C. 104(a)(1) (2007) (prohibiting a convening authority from censuring, reprimanding or admonishing the military commission, its members or the military judge); R.M.C. 407 (2007) (prescribing rules for forwarding and disposition of charges). If the Secretary of Defense disagrees with the convening authority's referral decision, he can refer the case to trial by military commission. See R.M.C. 601(f) (2007) ("The Secretary of Defense may cause charges, whether or not referred, to be transmitted to him for further consideration, including, if appropriate, referral."); see also R.M.C. 601(f) (2016) ("Except as otherwise provided in these rules, a superior competent authority may cause charges, whether or not referred, to be transmitted to the authority for further consideration, including, if appropriate, referral.").

Under 2006 MCA § 950v(b)(1), the murder of protected persons is the intentional killing of one or more persons "entitled to protection under on or more of the Geneva Conventions, including ... civilians not taking an active part in hostilities." 10 U.S.C. § 950v(a)(2)(A). 10 U.S.C. § 950v was omitted in the general revision of Chapter 47A by Act Oct. 28, 2009, P.L. 111-84, Div A, Title XVIII, § 1802. Title 10 U.S.C. § 950t(1) (2009) punishes "murder of protected persons" with "death or such other punishment as a military commission under this chapter may direct."